No. 85-101

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

TROY FORD,

Defendant and Appellant.

_____

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Philip J. Grainey; French, Mercer, Grainey and
Duckworth, Polson, Montana

For Respondent:

Mike Greely, Attorney General, Helena, Montana
John Frederick, County Attorney, Polson, Montana

_____

Submitted on briefs: July 25, 1985

Decided: October 8, 1985

Filed: OCT 8 1985

_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant appeals the order revoking his suspended sentence. The District Court of the Twentieth Judicial District, Lake County, reinstated the five-year sentence for aggravated burglary and assault, based upon a violation of a probation condition requiring immediate entrance into and completion of an in-patient alcoholism treatment program.

We affirm the revocation order but remand to the Twentieth Judicial District for findings of fact and conclusions of law on the designated dangerous offender status.

Appellant presents the following issues for review:

1. Does the record offer substantial evidence to support the District Court determination that the defendant violated a condition of his suspended sentence?

2. Did the probation officer adequately advise probationer as required by § 46-23-1011, MCA?

3. Did the court abuse its discretion in considering defendant's prior record and the offenses for which he was sentenced rather than limiting the hearing to the issue of probation violation?

4. Did the court properly classify defendant as a dangerous offender?

Troy Ford, aged twenty-three, pled guilty to charges of aggravated burglary and assault. He and two other males had entered a double-wide mobile home at about midnight on August 19, 1984, and wielded a baseball bat and a large stick upon the two unsuspecting occupants. Ford initialed his request to enter a guilty plea.

District Court Judge James B. Wheelis sentenced Ford on November 28, 1984, to five-years confinement at the Montana

2

State Prison with a five-year period of suspension with standard conditions and supervision. The minute entry recorded that defendant was to obtain alcohol counseling as recommended, including in-patient program. Further, "[i]f the probation is revoked and the defendant is ever sent to MSP, he is designated a dangerous offender."

The judgment based on the sentencing was entered December 10, 1984. However, following completion of sentencing on November 28, 1984, Ford was placed under the jurisdiction of the Adult Probation and Parole Division of the State of Montana Department of Institutions and ordered to comply with the terms and conditions of probation as established by the division.

On that same date, November 28, 1984, Ford met with Ron Alsbury, probation and parole officer for Lake County. Alsbury discussed with Ford the conditions of his probation and Ford initialed each of the requirements especially pertaining to him. In particular, Ford initialed before each of seven typed-in special conditions. The following pertains to the issues on appeal:

> 14. SPECIAL CONDITIONS:
>
> (1) Immediately enter & successfully complete in-patient alcoholism treatment program to be followed by aftercare program including half-way house, counseling, AA attendance & monitored antabuse if necessary.

Ford also initialed a condition restricting him to Lewis and Clark and Broadwater Counties where he wanted his probation transferred. Finally, Ford signed the entire agreement on conditions of probation, which stated that he fully understood and agreed to abide by and follow the conditions, fully

understanding the penalties for any manner of violation of conditions.

The director/counselor of the Lake County chemical dependency program had evaluated and counseled Ford before the plea bargain. After checking into several programs, she concluded that Galen was the only available program where he could be admitted right away and which had required in-patient treatment. She scheduled the appointment at Galen.

Ford met in Helena on November 29, 1984, with his new probation officer, Thomas Lofland, and said he was scheduled to go to Galen. Lofland issued the travel permit, advising him to verify that he was in Galen in the in-patient alcohol treatment program. Instead, Ford told the detox counselor at Galen that he did not have an alcohol problem and did not belong there. When contacted, Lofland told the counselor to advise Ford that there may be consequences in his refusal. Ford returned to Helena voluntarily on December 5, 1984, met with Lofland and was promptly arrested for violating conditions of his probation.

District Court Judge C. B. McNeil sitting at the revocation hearing on January 16, 1985, heard testimony from Lofland, Alsbury, Ford, and the two detox counselors in the matter. In its order, the court determined that Ford knew he had to comply with the conditions of the Adult Probation and Parole Division and that he had to enter and complete an in-patient alcoholism treatment program as recommended by his probation officer. The court found that Ford knew and discussed the required in-patient program with Alsbury, took the bus to Galen to the in-patient program he was required to enter and complete, and knowingly refused to participate in

4

the program. The court concluded that the State had met its burden of proof by sufficient evidence that Ford had violated the conditions imposed at sentencing on November 28, 1984; ordered that he be designated a dangerous offender for purposes of parole; and reinstated the full five-year sentence based upon the previous record of violent crimes.

1. **Substantial evidence.** Counsel for appellant contends that the sentencing proceedings and the subsequent judgment signed pursuant to the sentencing required Ford to obtain alcohol counseling but did not specify a particular program. Appellant asserts that the Lake County alcoholism counselor left Ford with the impression that he had a choice of alternative programs and he declined at Galen thinking he could get into another program. Arguing that the condition of attending the program at Galen was not a condition on the record, appellant claims that there is not substantial evidence to support the court's determination of a violation of the condition.

We hold that there was substantial evidence on the record to determine that Ford had knowingly violated the condition of attending the in-patient alcoholism treatment program. At sentencing on November 28, 1984, the court made clear that Ford was to attend an in-patient program as recommended and that he was under supervision. On November 28, 1984, his supervisory probation officer read every condition with Ford and Ford initialed the significant pertinent conditions, particularly that he "immediately enter [and] successfully complete in-patient alcoholism treatment program. . . ." Ford's later claim that he did not read the document he signed is without merit. The form he signed stated: "I have read, or have had read to me, the foregoing conditions

5

of my probation/parole." Once the Lake County alcoholism counselor realized that in-patient treatment was required, she scheduled an appointment at Galen for December 3, 1984, as the only suitable program he could immediately enter as required.

Further evidence on the record indicates that Ford met with his new supervisory officer on November 29, 1984. He received his traveling papers for Galen with the understanding that he should verify he was in the in-patient treatment program. He knew that immediate in-patient was a condition of his suspended sentence and that the consequences of breaching the conditions would be loss of the suspension of the sentence. He refused to sign the papers to enter the program, a violation of the sentencing requirement to obtain alcoholism counseling, including immediate in-patient treatment as recommended, and a violation of the conditions of probation, as initialed and signed.

2. <u>Probation officer's duty to advise</u>. Appellant contends that Lofland, the second probation officer, violated § 46-23-1011, MCA, in the duty to consult with the probationer ". . . to encourage him to improve his condition and conduct." Before Ford was transferred to Lofland's supervision, however, Alsbury in Lake County had explained the conditions of the suspended sentence. The Galen appointment had been made, and Alsbury further emphasized to Ford the importance of the Galen program and possible consequences when he gave him a ride to Missoula so that he could follow through on his appointment. Once there was a violation of the condition in Ford's denial of an alcohol problem and his refusal to enter immediately into the program, Lofland's duty to advise was replaced by his duty to report the violation.

6

The record supports the fact that Ford had been well-advised and counseled by his probation officer at the time of sentencing and after to follow the conditions he signed.

3. _Standard for determining abuse of discretion._ Appellant contends that the court abused its discretion in going beyond the issue of whether there was a violation of the condition of suspension. We find that the court revoked the suspension pursuant to the discretion granted in § 46-18-203, MCA, under which the sentencing judge who had the authority and discretion to suspend the sentence under § 46-18-201, MCA, ". . . or his successor is authorized in his discretion to revoke the suspension or impose sentence and order the person committed." For revocation following a hearing under § 46-23-1013, MCA, establishment of the violation of the probationary condition is necessary in order to exercise the discretion properly. State v. Kern (Mont. 1984), 695 P.2d 1300, 41 St.Rep. 1810. "_All_ that is required is that the facts before him be such that the judge is reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty." State v. Robinson (Mont. 1980), 619 P.2d 813, 815, 37 St.Rep. 1830, 1833.

The court must be satisfied at a minimum that the defendant violated the conditions of probation to revoke the suspension. This does not mean the court is limited only to consider facts on the alleged violation. The hearing afforded a defendant who has been arrested for an alleged probation violation is not required to follow the formalities of a hearing on a criminal offense: "The hearing may be informal or summary." Section 46-23-1013, MCA. Furthermore, the

7

court has considerable discretion in sentencing once the violation is proved:

> Action of court after arrest [of violator].
>
> 46-23-1013(2). If the violation is established, the court may continue to revoke the probation or suspension of sentence and may require him to serve the sentence imposed or any lesser sentence and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.

Once the violation was established, the court could not consider the violation for purposes of revocation without reference to the original offense and sentence. In a case previously decided by this Court, an appellant contended that the District Court erred in not showing "findings that continued probation would be at odds with society's interest in defendant's rehabilitation as well as the need to protect society." Kern, 695 P.2d at 1301. There we held that the court properly exercised its discretion. In addition to the revocation hearing, the court took the matter under advisement. The defendant had due process beyond the minimum required informal or summary hearing. Yet at its discretion the court could revoke the suspension based upon the established violation alone.

Here we have process in which the court held a full evidentiary hearing for purposes of establishing the violation, took the matter under advisement, determined that there was a violation, and then considered the interests of society and defendant's rehabilitation before imposing the sentence originally imposed pursuant to § 46-23-1013, MCA. "The decision to revoke a suspended sentence cancels a prior act

8

of grace and is a matter within the discretion of the district court." Kern, 695 P.2d at 1301.

We hold that there was no abuse of discretion, once the violation was established, in the court's consideration of the factors in the original sentencing to determine what sentence to impose. It is within the court's discretionary power to revoke the benevolent decision (to suspend the sentence) pursuant to § 46-18-203, MCA, when defendant does not merit further liberty or beneficence. Kern, 695 P.2d at 1302, citing Robinson, 619 P.2d at 814. Upon revocation, the court may exercise its discretion in determining a suitable sentence, based upon the original sentencing under § 46-23-1013, MCA. It is within its discretion to consider the entire record.

4. Designation of dangerous offender status. Appellant contends that the judge presiding at the revocation hearing had no jurisdiction to classify Ford as a dangerous offender and that Ford was improperly classified as a dangerous offender by the sentencing court. We find that the judge at the revocation hearing did not classify Ford; the sentencing court determined that the defendant was not eligible for nondangerous designation. This was within the discretion of the sentencing court under § 46-18-404, MCA.

This Court, however, has articulated requirements for a judgment determining dangerous offender status: ". . . an individual may be designated a dangerous offender, if, in the discretion of the sentencing court, he is determined to represent a substantial danger to other persons or society; however, more than a mere recital of the statutory language is required. The sentencing court must articulate its reasons underlying its determination." In the Matter of

9

McFadden (1980), 185 Mont. 220, 222, 605 P.2d 599, 600. (Emphasis added.) Where the record revealed substantial evidence to support a District Court determination of "dangerous" designation, this Court remanded the cause to the district judge for findings to support the conclusions. State v. Camitsch (Mont. 1981), 626 P.2d 1250, 1259, 38 St.Rep. 563, 573. Without the findings, this Court could not determine if there was an abuse of discretion.

We vacate that part of the judgment classifying appellant as a dangerous offender and remand to the District Court of the Twentieth Judicial District for findings and judgment on appellant's dangerous offender status. There is substantial evidence on the record, but without the reasons articulated in the judgment, we cannot make the determination if appellant was properly classified a dangerous offender.

Affirmed in part and remanded with instructions.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices