STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. KIM
DUNBAR, DEFENDANT-RESPONDENT.

Argued March 16, 1987—Decided July 7, 1987.

*Edward R. Bonanno,* Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards,* Attorney General of New Jersey, attorney; *Edward Bonnano* and *Marijean Raffetto Stevens,* Deputy Attorney General, of counsel and on the briefs).

*Judith B. Fallon,* Assistant Deputy Public Defender, argued the cause for respondent (*Alfred A. Slocum,* Public Defender, attorney; *Judith Fallon* and *Robert D. Clarke,* Designated Counsel, on the briefs).

The opinion of the Court was delivered by

O'HERN, J.

This case concerns the standards for imposing an extended term of imprisonment on a persistent criminal offender under *N.J.S.A.* 2C:43–7 and any effect that decision has on the discretionary power of the court to impose a period of parole ineligibility under *N.J.S.A.* 2C:43–7b.

Defendant was convicted of second-degree robbery, in violation of *N.J.S.A.* 2C:15–1. The offense was committed on April 22, 1983. Because he met the criteria for an extended term of imprisonment as a persistent offender under *N.J.S.A.* 2C:43–7, the defendant was exposed to a term of imprisonment between ten and twenty years, *N.J.S.A.* 2C:43–7a(3), with a presumptive term of fifteen years, *N.J.S.A.* 2C:44–1f, and exposure to a

maximum period of ten years imprisonment without possibility for parole under *N.J.S.A.* 2C:43–7b. The trial court imposed the presumptive sentence of fifteen years for a persistent offender convicted of second-degree crime, and added a period of seven years of parole ineligibility.[3]

The Appellate Division agreed that the defendant was eligible to be sentenced as a persistent offender. However, it found the "imposition of a seven-year minimum term [of parole ineligibility] on a 22 year-old with an adult record of two prior indictable convictions for burglary * * * shocking," and therefore eliminated the parole disqualifier pursuant to its residue of power to revise sentences in situations in which the application of the sentencing guidelines of the Code to the facts of the case "makes the sentence clearly unreasonable so as to shock the judicial conscience." *State v. Roth*, 95 *N.J.* 334, 365 (1984). We granted the State's petition for certification to review the unreported decision of the Appellate Division. 105 *N.J.* 579 (1986).

A correctly articulated sentence at the mid-range of an authorized extended term, with a parole disqualifier, may strike us as a harsh sentence, but that is the consequence of the legislative scheme and not a clear error of judgment by the trial court. Although the trial court may not have articulated the reasons for its sentence in the same way that we state them here, we are satisfied that they are sufficiently in accord with the Code's sentencing guidelines to warrant sustaining the sentence. Accordingly, we reverse the judgment of the Appellate Division and reinstate the sentence.

## I.

The history of sentencing repeat criminal offenders in American jurisdictions has been described in Kramer, "From 'Habitual Offenders' to 'Career Criminals,' The Historical Construction and Development of Criminal Categories," 6 *Law and Human Behavior* 273 (1982). In the 1920s and 1930s, reaction

to perceived weaknesses in the criminal justice system and the growing incidence of crime led many American jurisdictions to adopt habitual offender laws. Many, if not most, of these habitual offender statutes prescribed mandatory life imprisonment upon the third or fourth conviction.

Such measures proved to be more symbolic than substantive in the effort to reduce crime. They were rarely invoked and frequently subject to judicial challenge because of the discretion that they gave to the prosecutor alone to invoke the sanction. They also proved to produce unpredictable side effects on the plea bargaining process. *See Bordenkircher v. Hayes*, 434 *U.S.* 357, 98 *S.Ct.* 663, 54 *L.Ed.*2d 604, *reh'g denied*, 435 *U.S.* 918, 98 *S.Ct.* 1477, 55 *L.Ed.*2d 511 (1978) (Court narrowly sustains plea bargaining conditioned on prosecutorial abandonment of claim of habitual offender status); *see also* Klein, "Habitual Offender Legislation and the Bargaining Process," 15 *Crim. L. Quarterly* 417, 426 (1973) (prosecutors more often use habitual offender laws as a bargaining tool to strengthen their positions in negotiations of pleas and sentences with defense attorneys (quoting Furgeson, "The Law of Recidivism in Texas," 13 *McGill L.J.* 663 (1967))).

In dissenting from the imposition of a life sentence for the theft by false pretenses of $120, Justice Powell traced the gradual replacement of the mandatory life sentence for the persistent offender with more discretionary or flexible schemes as a result of "a judgment that under some circumstances life imprisonment for an habitual criminal is not justified." *Rummel v. Estelle*, 445 *U.S.* 263, 297, 100 *S.Ct.* 1133, 1151, 63 *L.Ed.* 2d 382, 405 (1980) (citation omitted). He noted that at that time

[m]ore than three-quarters of American jurisdictions have never adopted a habitual offender statute that would commit the petitioner to mandatory life imprisonment. The jurisdictions that currently employ habitual offender statutes either (i) require the commission of more than three offenses, (ii) require the commission of at least one violent crime, (iii) limit a mandatory penalty to less than life, or (iv) grant discretion to the sentencing authority. [*Id.* at 298, 100 *S.Ct.* at 1151, 63 *L.Ed.*2d at 406 (footnotes omitted).]

Justice Powell's position carried the day in *Solem v. Helm*, 463 *U.S.* 277, 103 *S.Ct.* 3001, 77 *L.Ed.*2d 637 (1983), which held that the imposition of life imprisonment for a repeat, non-violent offense of uttering a $100 bad check so offended "[t]he principle that a punishment should be proportionate to the crime" that the sentence was held unconstitutional. *Id.* at 284, 103 *S.Ct.* at 3006, 77 *L.Ed.*2d at 645.

Recognizing that untrammelled discretion was one of the principal vices of the sentencing process in American jurisprudence, and notwithstanding the difficulty in defining the outer limits of habitual offender sentencing patterns, most mid-century studies of the criminal justice system proposed giving courts graded discretion to sentence certain convicted offenders to a period beyond the ordinary statutory term for the offense if the defendant was found to be an habitual offender or meet other criteria. Note, "The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals," 89 *Harv.L.Rev.* 356, 356 (1975). *See* Task Force on Criminal Sentencing, The Twentieth Century Fund, *Fair & Certain Punishment* 21 (1976) (in special circumstances a judge would be permitted to deviate from the presumptive range permitted by an ordinary finding of aggravating or mitigating factors); Task Force on the Administration of Justice, The President's Commission on Law Enforcement and Administration of Justice, *Task Force Report: The Courts* 15 (1967) ("An enlightened sentencing code * * * should ensure that long prison terms are available for habitual, dangerous, and professional criminals who present a substantial threat to the public safety * * *. Moreover, it should provide the courts and correctional authorities with sufficient flexibility to fix lengths of imprisonment which are appropriate on the facts of each case.").

The framers of the 1961 Model Penal Code sought to balance their intuitive awareness and the statistical evidence that a small number of repeat offenders were responsible for a disproportionate amount of crime, with the demands of justice that principled sentencing be related to the offense for which the

defendant stands convicted. Their examination of habitual offender laws during the drafting of the Model Penal Code led to the conclusion

that they are a failure, productive of chaotic and unjust results when they are used, and greatly nullified in practice. Their difficulty, in our view, inheres in four defects: first, they are mandatory wholly or in part in over half the jurisdictions; second, the extensions often are too long or appear arbitrary in their length, especially when they import long minima or otherwise exclude parole; third, the extension, especially when it involves life sentence, takes inadequate account of the gravity of the offense of last conviction for which the sentence is imposed; and fourth, the extension rests entirely upon prior record and takes no account of other types of special danger that particular offenders may present. [*Model Penal Code and Commentaries (Official Draft and Revised Comments*) § 6.07 comment at 172 (1985) (*MPC*) (quoting Wechsler, "Sentencing, Correction, and the Model Penal Code," 109 *U.Pa.L.Rev.* 465, 483 (1961)).]

The core dissatisfaction derived from the sense of injustice that occurs when major criminal penalties are imposed upon conviction of a minor offense. To remedy these shortcomings, the drafters of the Model Penal Code established three major premises: (1) the length of the extended term should be limited by the seriousness of the crime for which the offender presently stands convicted; (2) the precise contours of the sentence always should remain primarily within judicial control; and (3) the conduct that is the occasion for sentence should control the severity of the sentence. *Id.* at 175, 176, 177.

As we shall see, New Jersey's Code of Criminal Justice, with certain modifications, essentially tracks this scheme. Obviously, a scheme of "two-tiered" or "desert-oriented" sentencing presents some conflict for a system premised on the "just deserts" philosophy of sentencing.[1] von Hirsch, "Desert and Previous Convictions in Sentencing," 65 *Minn.L.Rev.* 591 (1981). "The issue of prior criminality is critical to a desert-oriented theory of sentencing because it so much influences the

---

[1]This concern is heightened in jurisdictions that premise extended sentences on prediction of future criminality. Such sentencing would be more offender-oriented than offense-oriented. von Hirsch, "Desert and Previous Convictions in Sentencing," 65 *Minn.L.Rev.* 591, 592 (1981).

architecture of the penalty scale. If prior record is relevant to an offender's deserts, that permits a two-dimensional penalty scale * * *." *Id.* at 593. To some extent, Professor von Hirsch resolves the conflict by reference to ordinary human judgment—is not the repeat offender more blameworthy?—and poses the question as "whether this feature of ordinary desert-judgments—the use of prior misconduct—may properly be carried over into criminal sentencing law." *Id.* at 595. The framers of the Model Penal Code accepted this premise without debate. The 1985 Code Commentary notes simply that "most of the revisions that have adopted 'presumptive sentence' structures have accepted the idea that habitual offenders should be subject to more severe penalties than first offenders," referring specifically to *N.J.S.A.* 2C:43–7. *MPC, supra,* § 6.07 comment at 176 & n. 18.

## II.

### A.

In adopting the present extended sentence structure, the framers of the New Jersey Code of Criminal Justice drew upon our existing practice of distinguishing between increased terms and ordinary terms of imprisonment for the same crime based not on the prediction of future criminality, but on the past record of criminality. *See N.J.S.A.* 2A:85–8 to –13, the Habitual Offender Act, repealed by *L.* 1978, *c.* 95; *State v. McCall,* 14 *N.J.* 538, 546–49 (1954) (historic review of New Jersey's scheme of habitual offender sentencing).

Although the criteria for imposing extended terms differ from pre-Code law, a similar pattern exists: (1) the choice to impose the extended sentence is within the discretion of the court; (2) the maximum exposure is premised on the current offense; and (3) the measure of the sentence is guided by specific criteria.

Under *N.J.S.A.* 2C:44–3, the court may, on application by the prosecutor, sentence a first-, second-, or third-degree offender

to an extended term, but only if it finds that the defendant is either (1) a persistent offender, (2) a professional criminal, or (3) a hired criminal.[2] We shall not, in this opinion, deal with extended terms for Graves Act offenses. *N.J.S.A.* 2C:44-3d. *See State v. Martin*, 209 *N.J.Super.* 473, *certif. granted*, 104 *N.J.* 461 (1986).

*N.J.S.A.* 2C:43-7 prescribes the range of extended sentences. For example, a first-degree extended sentence shall be "for a specific term of years * * * between 20 years and life imprisonment." *N.J.S.A.* 2C:43-7a(2). *N.J.S.A.* 2C:44-1 sets forth a presumptive sentence for each extended term. In the case of a first-degree offense the presumed extended term is fifty years. *N.J.S.A.* 2C:44-1(f)(1). (The Code has specific prescriptions for certain offenses such as murder, kidnapping, and aggravated assault.) Higher or lower base terms are imposed depending on the balance of aggravating and mitigating factors. *N.J.S.A.* 2C:44-1f. Finally, *N.J.S.A.* 2C:43-7b authorizes the imposition, on the extended term, of a period of parole ineligibility not to exceed one-half of the term, or twenty-five years in the case of

---

[2]The exact criteria that must be found are:

a. *The defendant is a persistent offender.* A persistent offender is a person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced.

b. *The defendant is a professional criminal.* A professional criminal is a person who committed a crime as part of a continuing criminal activity in concert with two or more persons, and the circumstances of the crime show he has knowingly devoted himself to criminal activity as a major source of livelihood.

c. The defendant committed the crime as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value the amount of which was unrelated to the proceeds of the crime or he procured the commission of the offense by payment or promise of payment of anything of pecuniary value.

*　*　*　*

life imprisonment. In imposing parole ineligibility the sentencing court "shall specifically place on the record the aggravating factors set forth in this section which justify the imposition of a minimum term." *N.J.S.A.* 2C:44–1f(1).

 Practical application of the Code's extended sentencing scheme thus involves a multi-step process. First, the sentencing court must determine whether the minimum statutory predicates for subjecting the defendant to an extended term have been met. Second, the court must determine whether to impose an extended sentence. Third, it must weigh the aggravating and mitigating circumstances to determine the base term of the extended sentence. Finally, it must determine whether to impose a period of parole ineligibility.

Once the sentencing court has made the first determination that the defendant is eligible for extended sentencing, the court is not able to look to the Code for an explicit standard by which it should exercise its discretion to impose the extended sentence. The New Jersey Criminal Law Revision Commission, 2 *Tentative Draft* 758 (1971) (*Tentative Draft*), emphasized that

the Court is not obliged to make the finding under this Section [that the defendant be sentenced to an extended term] and we anticipate that relatively few convictions will warrant the conclusion. The requirement of the crimes being committed at different times and of a finding of relative maturity will safeguard the defendant.

The Code Commentary states that

[s]ubsections a through e [establishing eligibility for an extended term] state the minimal requirements for * * * [finding the existence of each of the statutory predicates,] but the existence of the minimal conditions do not make the finding necessary. Indeed, it is not compulsory in any case. Minimal conditions are stated as a safeguard against possibly abusive findings, not as a judgment that establishment of the conditions necessarily demands that the finding in question should be made. Of course, before the court can make the ultimate finding required, it must find that the minimal conditions are established. [*The New Jersey Penal Code, Final Report of New Jersey Criminal Law Revision Commission*, Vol. II: Commentary at 329 (1971) (hereinafter *Final Report*).]

Generally, under a Model Penal Code system, the ultimate finding that the extended sentence shall apply

[focuses] on the nature of the offenses committed and the defendant's propensities toward further dangerous, professional, or persistent criminal conduct. Applicability of the statute to the particular defendant is determined upon findings by the court pursuant to special proceedings. Enhanced sentences may be imposed if the court finds this necessary for reasons of public safety or rehabilitation. [Note, "A Closer Look at Habitual Criminal Statutes: *Brown v. Parratt*, and *Martin v. Parratt*, A Case Study of the Nebraska Law," 16 *Am.Crim.L.Rev.* 275, 276 n. 3 (1979) (citing 18 *U.S.C.* §§ 3575–3576 (1976); *N.D.Cent.Code* § 12.1–32–09 (1976 & Supp.1977)).]

Other codes, with broader ranges of discretion, require sentencing courts to articulate their findings leading to a determination to impose an extended sentence. In Montana,

an individual may be designated a dangerous offender, if, in the discretion of the sentencing court, he is determined to represent a substantial danger to other persons or society; *however, more than a mere recital of the statutory language is required. The sentencing court must articulate its reasons* underlying its determination. * * * Without the findings, this Court could not determine if there was an abuse of discretion. [*State v. Ford*, 707 *P*.2d 16, 20 (Mont.1985) (citation omitted).]

Imposition of Florida's habitual offender sentencing requires a finding that an extended prison term is "necessary for the protection of the public." *Hester v. State*, 503 *So*.2d 1342, 1344 (Fla.Dist.Ct.App.1987) (citing 44 *Fla.Stat.Ann.* § 775.084(3) (1985)).

As originally proposed, the Code of Criminal Justice required that the court "incorporat[e] in the record" a finding that "the defendant is a persistent offender whose commitment for an extended term is necessary for the protection of the public." *Final Report, supra,* Vol. I at 154. In the process of legislative revisions that added the dangerous and mentally abnormal category (later deleted) and expanded the persistent offender and professional criminal categories, the reference to "protection of the public" was not carried forward. But we find no evidence of intent to adopt any other standard. Such a standard is consistent with the general mandate in New Jersey that the provisions of the Code be interpreted to further the general purposes of sentencing as defined in *N.J.S.A.* 2C:1–2b, including the insurance of "the public safety by preventing the commission of offenses through the deterrent influence of

sentences imposed and the confinement of offenders when required in the interest of public protection." *N.J.S.A.* 2C:1–2b(3).

The sentencing judge's evaluation of what is required in the interest of public protection is a difficult but familiar process. *State in the Interest of C.A.H. and B.A.R.*, 89 *N.J.* 326, 336 (1982) (in the context of the juvenile offender, citing *State v. Ivan*, 33 *N.J.* 197, 201–02 (1960)). It requires the court to decide "in what way the interest of the public will best be served." *State v. Ivan, supra*, 33 *N.J.* at 201. Primarily, "the adequate protection of society" standard encompasses the doctrine of deterrence—the protection of society from future offenses by the defendant and others through punishment. *C.A.H. & B.A.R., supra*, 89 *N.J.* at 337 (citations omitted). "Serious, harmful and calculated offenses typically call for deterrence." *Id.* at 337 *n.* 2. Under the legislatively created sentencing scheme, then, recognition of persistent offender status adds an additional feature to the Code's central premise that the punishment should fit the crime and not the criminal. That feature is a possible increase in the sentence to be imposed on conviction of a particular offense, which increase is premised on a view of the entire person of the defendant before the sentencing court. The primary motivation behind legislative creation of persistent offender status is to deal with the particular defendant in the context of the offense committed.

### B.

Once the decision to impose an extended term has been made, the court should then return its focus primarily to the offense. "[T]he conduct that is the occasion for the sentence controls the severity of the sentence * * *." *MPC, supra*, § 6.07 comment at 174. As noted, depending on the balance of the aggravating and mitigating factors, the court adjusts the base term of the sentence. *N.J.S.A.* 2C:44–1f. The defendant's prior record of conviction has been taken into

account in deciding whether to impose an extended term and presumably would not have the same qualitative weight in grading the range of the extended sentence. But other aspects of the defendant's record, which are not among the minimal conditions for determining persistent offender status, such as a juvenile record, parole or probation records, and overall response to prior attempts at rehabilitation, will be relevant factors in adjusting the base extended term. Nonetheless, the primary focus will be on the conduct that occasions the sentence.

As noted, as part of the sentence for an extended term, the court may set a period of parole ineligibility not to exceed one-half of the authorized term (or a term of twenty-five years in the case of a sentence to life imprisonment). *N.J.S.A.* 2C:43–7b. The Code explicitly requires that: "In imposing a minimum term [of parole ineligibility] pursuant to 2C:43–6b, the sentencing court shall specifically place on the record the aggravating factors set forth in this section which justify the imposition of a minimum term." *N.J.S.A.* 2C:44–1f. In addition, *N.J.S.A.* 2C:43–6b, defining the authority of the court to impose a period of parole ineligibility "[a]s part of a sentence for any crime," requires that the court be "clearly convinced that the aggravating factors substantially outweigh the mitigating factors." Although the same language of balance is not carried forward into 2C:43–7b, authorizing the imposition of a parole disqualifier as part of a sentence for an extended term, we are satisfied that the Legislature intended the same balancing process, i.e., that the court be "clearly convinced that the aggravating factors substantially outweigh the mitigating factors." [3] *Cf. State v. Reed,* 215 *N.J.Super.* 105, 107 (App.Div.

[3]As originally enacted, the Penal Code contained no standards for imposing terms of parole ineligibility. Prior to its amendment in 1981, the requirements of *N.J.S.A.* 2C:43–6b paralleled those of 2C:43–7b. *L.*1979, *c.* 178. In an amendment to 2C:44–1f, the Legislature used identical language in the context of ordinary and extended term sentencing, requiring the sentencing court in

1987) (although *N.J.S.A.* 2C:43–6c (Graves Act) does not contain balancing requirement, "in order to raise the ineligibility term above the mandatory minimum * * *, the sentencing judge in stating reasons for increasing the ineligibility term above the mandatory minimum must find that the aggravating factors outweigh the mitigating").

In determining parole ineligibility it would clearly be necessary to take into account the defendant's entire prior record as part of the weighing process. The reasoning that supports the differing role of the prior record in the two settings of base term and parole disqualifier is that if the court gives qualitative weight to the prior offenses in setting the range of the extended term, it will almost always end up at the higher range of an extended sentence. The Legislature probably did not intend that. But if the court does not consider the prior offenses in setting parole ineligibility, it may often end up with no parole ineligibility since there might not be sufficient other aggravating factors to clearly and substantially outweigh the mitigating factors, a result the Legislature also probably did not intend.

In *State v. Kruse*, 105 *N.J.* 354 (1987), we recently reviewed the standards for imposition of a parole disqualifier in circum-

---

both instances to place on the record the aggravating factors that justify imposition of a minimum term of parole ineligibility. *L.*1981, *c.* 290. Although the 1981 amendment to 2C:43–6 incorporated the present balancing requirement into the provisions for ordinary sentencing, it added the balance language generically, as part of a sentence for "any crime." *L.*1981, *c.* 569. The committee statements to A–1904, *L.*1981, *c.* 569, indicate that the Legislature considered the absence of statutory criteria to guide sentencing courts in making these determinations inconsistent with the "overall plan of sentencing in the Criminal Code." The Assembly Judiciary Committee statement says that the bill "fills a gap in the system of sentencing criteria, and provides that if a court wants to set a minimum sentence, it should follow the procedures appropriate to other sentencing decisions, based on the provisions of 2C:44–1f." When the Legislature made this correction, it did not make a corresponding change in 2C:43–7. However, there is no reason to believe that the Legislature intended to exempt the parole ineligibility determination under 2C:43–7 from the overall purpose of the Code sentencing provisions to "temper judicial discretion with legislative criteria." *Ibid.*

stances when the court imposes a presumptive term of imprisonment. We explained that in the context of ordinary term sentencing under *N.J.S.A.* 2C:43–6, only in certain limited situations may a court impose a period of parole ineligibility in conjunction with a presumptive sentence. 105 *N.J.* at 361. But we expected that "it [would] be a rare case in which the sentencing court imposes a period of parole ineligibility on top of a presumptive sentence." *Id.* at 362. We emphasized, however, that the hallmark of a principled sentence will be found in the reasons stated by the court for the imposition of the sentence. *Id.* at 360.

The process for imposition of a parole disqualifier in the setting of an extended term sentence is somewhat different from the parole disqualifier inquiry used for the ordinary term offender because of the "two-tiered" process used in extended sentencing. Harmonizing a presumed extended term and a period of parole ineligibility is more consistent with the Code's structure in the context of extended sentencing because of the two-fold role of the prior record in the extended sentencing process; it determines both the eligibility for an extended sentence and, in part, the length of the base and parole ineligibility features of the sentence.

The reasoning that harmonizes the imposition of parole ineligibility on a presumptive term for an extended sentence is the same reasoning that leads to the conclusion that the prior offenses should not be considered (or at least not as much) in deciding whether the sentence should be increased above or decreased below the presumptive term but should be used in deciding on parole ineligibility. *Supra* at 91. A court that has decided to impose an extended term in the interest of public protection on the basis of defendant's prior offenses may conclude quite correctly that a presumptive extended term reflects the appropriate balance of other aggravating factors against mitigating, but that the totality of aggravating factors, including the prior record, clearly and substantially outweighs the mitigating factors and calls for a period of parole ineligibility.

A sentencing court is specifically required to consider parole consequences in sentencing, *N.J.S.A.* 2C:44–1c(2), and it would be anomalous that an extended sentence of fifty years results in little more real time than an ordinary term of twenty years with a ten-year parole ineligibility bar. *Cf. State v. Guzman*, 199 *N.J.Super.* 346, 350 n. 2 (Law Div.1985) (noting difference between parole disqualifier in ordinary and extended sentencing contexts).

### III.

We turn now to the application of these principles to the facts of this case. Defendant was eligible for sentencing as a persistent offender. Notice of the prosecutor's intention to seek such a sentence was given. There is no dispute that the defendant had two prior convictions as an adult stemming from two burglaries, one of which occurred in 1980 and the other, involving two counts of burglary and escape, in 1981. For the 1980 offense, defendant received five years probation and 180 days in the county jail. Following his 1981 conviction, defendant received a four-year sentence and was paroled after a year. He now stands convicted of the more serious crime of robbery arising out of a theft from a jewelry store during which he knocked the seventy-year old proprietor to the ground, causing severe injuries to the back and neck. This offense occurred only two months after defendant was paroled from his last imprisonment. Although defendant's relative youth ordinarily would inure to his benefit in evaluating the choice of extended sentence, *see* 2 *Tentative Draft, supra,* at 89 (referring to "relative maturity" of defendant), he appears to have resisted prior efforts at reform.

Choosing whether to impose the extended term requires consideration of the need for public protection. Some of the factors that make prior crimes relevant to present conduct may be useful to consider, e.g., serious crimes, particularly crimes of violence, should be considered as having a weightier effect than

property crimes, *State v. Sands*, 76 *N.J.* 127, 144 (1978), unless the present offense is similar. *See also State v. Gibbons*, 105 *N.J.* 67, 82–84 (1987) (considering circumstances in which prior crime may be taken as evidence of predisposition to commit present offense).

Considering the relative weight, severity, and similarity of the prior offenses, we would not fault the judgment of the trial court that it should impose the sentence as a persistent offender, although the sentencing transcripts do not, in themselves, reflect the kind of articulation that we have suggested.

Having determined to sentence defendant as a persistent offender, the court proceeded to impose the presumed fifteen-year term. The premise of such term ordinarily would be that the aggravating factors did not outweigh the mitigating factors. *N.J.S.A.* 2C:44–1f. As noted, in imposing a parole ineligibility term, the sentencing court is specifically required to "place on the record the aggravating factors * * * which justify the imposition of a minimum [parole ineligibility] term." *N.J.S.A.* 2C:44–1f(1). In this case, the court did not specifically distinguish between those factors that led to its decision to impose the presumptive extended term and those leading it to impose the base and parole ineligibility terms.

The trial court's combined analysis, however, enables us to glean that it believed the imposition of an extended sentence was necessary for the protection of the public and that because the aggravating factors clearly and substantially outweighed the mitigating factors, a period of parole ineligibility should be imposed. Implicit in its sentence was the conclusion that the fifteen-year presumptive term was an appropriate base extended term.

The aggravating factors that it found under 2C:44–1(a) were that the victims were elderly and unable to resist; that defendant unnecessarily knocked the owner down after grabbing a pile of $20 bills; that he had previously harassed the victim; that there was a substantial risk that defendant would commit

further offenses as shown by his lengthy juvenile record, his adult record including violations of parole and probation, his failure to respond to any rehabilitative programs, and his having been evaluated as a threat to the community. Finally, the court found a substantial need for deterring the defendant and others from violating the law and particularly for deterring criminal conduct in the victimized areas. It found no mitigating factors.

The paramount goal of our sentencing reform has been to seek greater uniformity in sentencing. *State v. Hartye*, 105 *N.J.* 411, 415–16 (1987).

> To continue this evolution towards a [uniform] law of sentencing, it should increasingly be required that the judge give reasons for his choice of sentence and that his sentences, and thus his reasons, be subject to appellate review. Principled sentencing lies at the heart of an effective criminal justice system. [Morris, "Towards Principled Sentencing," 37 *Md.L.Rev.* 267, 275 (1977).]

To achieve principled sentencing, we recently reemphasized this aspect of our sentencing process:

> Merely enumerating [mitigating and aggravating] factors does not provide any insight into the sentencing decision, which follows not from a quantitative, but from a qualitative, analysis. We are deprived of the benefit of the court's reasoning, a condition precedent to the imposition of a period of parole ineligibility. [*State v. Kruse, supra*, 105 *N.J.* at 363 (citation omitted).]

■ We are satisfied that the sentencing transcripts here reveal a sufficiently qualitative analysis to sustain this sentence. It is not necessary that every sentence be a discourse. A brief reference to the reasons for imposing the extended term, once the minimal conditions are met, a recital of the specific aggravating and mitigating factors found and their balance, and the reasoning that led to the choice of the base and parole ineligibility terms will suffice to explain the sentence.

■ While greater weight might have been accorded to defendant's youth before imposing a lengthy parole disqualifier as defendant's first exposure to hard time, given the totality of circumstances here—that the defendant had failed to respond to prior non-custodial efforts at rehabilitation, and that his conduct was escalating in violence—the sentencing court's de-

termination to impose an extended term with a seven-year parole disqualifier was made in essential accord with the Code's sentencing guidelines and does not constitute such a clear error of judgment as to warrant appellate revision.

For the reasons stated, the judgment of the Appellate Division is reversed and the sentence of the trial court is reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.