**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1571-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ORRIC MITCHELL,

     Defendant-Appellant.

_____

Submitted February 2, 2021 – Decided April 30, 2021

Before Judges Fisher, Moynihan and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 18-01-0133.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen W. Kirsch, Designated Counsel, on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel Marzarella, Chief Counsel, of counsel; Shiraz Deen, Assistant Prosecutor, on the brief).

PER CURIAM

Tried to a jury, defendant Orric Mitchell was found guilty of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1), -5(b)(3); and distribution of CDS in a quantity of less than one-half ounce, N.J.S.A. 2C:35-5(a)(1), -5(b)(3).[1] He appeals from his conviction and sentence, arguing:

> POINT I
>
> THE JURY INSTRUCTION REGARDING THE CODEFENDANT'S TESTIMONY FOR THE STATE IMPROPERLY TOLD THE JURORS THAT IF THEY BELIEVED HIS TESTIMONY, THEY HAD "A RIGHT TO CONVICT DEFENDANT ON HIS TESTIMONY ALONE" -- A PATENTLY ERRONEOUS INSTRUCTION UNDER THE FACTS OF THIS CASE.
>
> POINT II
>
> DETECTIVE QUINN IMPROPERLY PROVIDED OPINION TESTIMONY THAT TWICE VIOLATED THE DICTATES OF STATE V. MCLEAN, OFFERING OPINIONS THAT INVADED THE FACT-FINDING PROVINCE OF THE JURY AND WHICH EXPRESSED VIEWS ON THE GUILT OF THE DEFENDANT.

---

[1] Defendant was acquitted of fourth-degree obstruction of the administration of law, N.J.S.A. 2C:29-1(a).

POINT III

THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE.

We affirm defendant's conviction but remand for resentencing.

Detective Brian Quinn, of the Toms River Police Department, testified at trial about his surveillance that led to defendant's arrest. Quinn observed defendant leave a room at a motel, heard him use a cell phone, and saw him "look[] about the area as if looking to locate someone," then cross six lanes of traffic on Route 37 and walk to a convenience store parking lot where he met Robert Mercadante. Mercadante and defendant entered a vehicle, and, with Mercadante driving, "travel[led] about two store fronts before . . . pulling over to the side of the road in a dirt parking lot." After Mercadante parked, defendant exited from the front passenger seat and crossed Route 37.

Quinn "[c]ontinued surveillance" of Mercadante as he drove off and parked in an isolated portion of a seafood establishment's parking lot. Quinn approached the vehicle after observing Mercadante look down while "manipulating an item on his lap" and saw "several wax folds of suspected heroin on his lap." Quinn arrested Mercadante. Twenty folds bearing "a purple

A-1571-19

stamp of the word [']venom[' and] a picture of what appear[ed] to be a scorpion" were recovered from the vehicle.

Quinn then went to the motel where he first saw defendant. He "ultimately" saw defendant, followed by a female later identified as defendant's girlfriend, leaving the same room he had previously seen defendant twice exit. Defendant was arrested and Quinn requested his consent to search that room. Defendant advised Quinn "it wasn't his [m]otel room to consent to" and Quinn would have to speak with his girlfriend.

Quinn testified he spoke with the girlfriend, who was "very cooperative," and asked her for consent to search the room because he "believed there to be additional quantities . . . of heroin" there. He identified a consent-to-search form he said the girlfriend signed. During the search of the room police seized mail addressed to defendant at that motel, $255 in cash from the pocket of men's pants and a G-Shock watch case that contained approximately fifty folds of heroin, a number of which were stamped with a purple scorpion and the word "venom" and others stamped in red with the words "tunnel vision."

Defendant argues Detective Quinn "functionally" told the jury "he believed he was witnessing behavior indicative of drug-dealing" and "did something similar with regard to the [m]otel room, offering the opinion that the

room likely contained heroin as his reason for requesting consent to search that room." He contends these lay opinions invaded the province of the jury in contravention of the holding in State v. McLean, 205 N.J. 438 (2011). Defendant did not object at trial.

Defendant claims the improper testimony occurred when "Quinn told the jury that he was engaging in undercover surveillance on the day in question, 'watch[ing] the behaviors of people, look[ing] for any type of sign of something indicative of some type of drug transaction,'" and then describing defendant's activities as Quinn "continued" his surveillance of defendant from the motel through the time defendant had met with Mercadante.

Quinn's testimony, however, did not violate our Supreme Court's prohibitions against improper lay or expert opinions because Quinn did not offer any opinion. The freighted meaning defendant attaches to Quinn's testimony about his surveillance cannot stand when that testimony is viewed in context.

Quinn first told the jury that, in formulating his unit's activities for that shift, they "opted to conduct surveillance of what [they referred] to as the east end of town," an area known for "a higher level of drug distribution." When asked what he meant by "surveillance," Quinn explained that his unit would "basically find[] an area to sit, whether it be a . . . residential parking lot, a hotel

5

or motel parking lot . . . [and] just watch the behaviors of people, look for any type of sign of something indicative of some type of – drug transaction."

When he described his observations of defendant before, during and after his meeting with Mercadante, Quinn never opined he believed defendant was engaging in a drug transaction. Unlike the impermissible testimony in McLean, neither the assistant prosecutor nor Quinn referenced his training and experience; and Quinn never coupled his training and experience in replying to the State's request to advise the jury about what he believed he observed. See McLean, 205 N.J. at 461-63. He never opined as to defendant's guilt. See ibid.

Quinn offered nothing more than his perceptions. Those were not lay opinions. Quinn was a fact witness: one who testifies as to what "he or she perceived through one or more of the senses." Id. at 460. "Fact testimony has always consisted of a description of what the officer did and saw[.]" Ibid. "Testimony of that type includes no opinion, lay or expert, and does not convey information about what the officer 'believed,' 'thought' or 'suspected,' but instead is an ordinary fact-based recitation by a witness with first-hand knowledge." Ibid.

Quinn did not link defendant's actions with his early testimony giving a general description of surveillance. The jury was left to decide if defendant

possessed and distributed the heroin found in Mercadante's possession. The jury was left to weigh Quinn's testimony, as well as that given by Mercadante and other State's witnesses about the folds found in Mercadante's lap and vehicle. Quinn's testimony about his observations of defendant did not "intrude on the province of the jury by offering, in the guise of opinions, views on the meaning of facts that the jury is fully able to sort out . . . [or] express a view on the ultimate question of guilt or innocence." Id. at 461.

Defendant also argues Quinn's reply to the assistant prosecutor's question about why he asked defendant's girlfriend for consent to search the motel room: "I believed there to be additional quantities – of heroin in the room," also offered opinion testimony that contravened McLean's prohibitions. The State does not even address this issue in its merits-brief argument. Again, defendant did not object to the testimony.

The reason for Quinn's request to consent was of dubious relevance to the jury's consideration of the case; it involved a legal issue relevant to a suppression motion. In short, the assistant prosecutor should not have asked that question, and the trial judge should have sua sponte prevented Quinn from answering.

The testimony, however, related only to Quinn's reason for asking consent to search. Quinn did not opine that he believed defendant possessed the heroin

that was ultimately found in the room. Other evidence supported the link between the heroin found and defendant, notwithstanding that only an officer's fingerprint was found on the watch case: the observations of defendant twice exiting the room that day, before and after his meeting with Mercadante; the letter addressed to defendant at the motel; the stamps on some of the folds found in the room that matched those in Mercadante's possession. The jury was left to decide if the substance was heroin and if defendant possessed it with the intent to distribute it. Quinn's belief that there was heroin in the room did not invade the jury's province as to the elements of the crimes.

Unless defendant timely made the "objection to admission known to the trial court, the reviewing court will review for plain error, only reversing if the error is 'clearly capable of producing an unjust result.'" State v. Rose, 206 N.J. 141, 157 (2011) (quoting R. 2:10-2). "Under that standard, defendant has the burden of proving that the error was clear and obvious and that it affected his substantial rights." State v. Morton, 155 N.J. 383, 421 (1998). Under the circumstances of the case, we are convinced that isolated testimony was not "clearly capable of producing an unjust result." R. 2:10-2.

Defendant also contends the trial judge erred by failing to tailor to the facts of this case that portion of a model jury instruction that provides: "If you

8

believe this witness to be credible and worthy of belief, you have a right to convict the defendant on his/her testimony alone, provided, of course, that upon a consideration of the whole case, you are satisfied beyond a reasonable doubt of the defendant's guilt." Model Jury Charges (Criminal), "Testimony of A Co-Defendant or Witness" (rev. Feb. 6, 2006).

Mercadante testified as the State's witness after cooperating with the State on an unrelated case; he had not pleaded guilty to the crimes charged in the indictment returned against him and defendant. He confirmed he had telephoned defendant and arranged the purchase of heroin as described, in large measure, by Quinn's testimony.

"[T]hat testimony alone," defendant avers in his merits brief, "did not allow the jury to convict defendant of any of the charges in the case," in that "it had nothing to do with the heroin found in the motel room, and . . . did not even provide everything the jury needed to convict defendant on the distribution charge, because [Mercadante] did not testify that the substance he received actually was heroin; rather, the [State's] forensic scientist . . . provided that testimony." Defendant asserts the unabridged model instruction was "misleading and false" because "Mercadante's testimony alone" was insufficient

evidence to prove each element of the charged crimes; and the judge erred by failing to delete the last sentence of the model charge.

Before Mercadante testified, both counsel discussed Mercadante's cooperation with the trial judge prompting the judge to advise counsel of the pertinent model charge, including the footnote cautioning:  "This charge should not be given except upon the request of defense counsel."  Ibid.  Defense counsel said the charge should be given during the final instructions.

In the final instruction, the judge tailored the final charge to reflect that, although Mercadante had received a plea offer from the State, he had not yet pleaded guilty.[2]  The judge instructed the jury it could use "[e]vidence of . . .

---

[2]  The model charge provides:

> _____, who was [charged with] [indicted for] the crime(s) that defendant is on trial for, has testified on behalf of the State.
>
> (When witness is a co-defendant and has pleaded guilty prior to defendant's trial)
>
> _____, who was [charged with] [indicted for] the crime(s) that defendant is on trial for, has pleaded guilty to (one/some of) those charges, namely _____, and has testified on behalf of the State. Evidence of _____'s plea of guilty may be used only in determining the credibility or believability of the witness' testimony.

10

Mercadante's plea offer . . . only in determining the credibility or believability of the witness's testimony," and continued with model charge verbatim, essentially telling the jury that Mercadante's credibility deserved careful scrutiny and assessment "in the context of his special interest in the proceeding," State v. Spruill, 16 N.J. 73, 80 (1954), and that jurors could "not use . . . Mercadante's plea offer as evidence that . . . defendant [was] guilty of the crimes that he [was] charged with." The judge included the last sentence of the model charge. Defendant did not object.

It is axiomatic that appropriate jury charges are "essential to a fair trial." State v. Savage, 172 N.J. 374, 387 (2002) (citing State v. Collier, 90 N.J. 117, 122 (1982)). When a defendant fails to object to a jury charge, we review for plain error and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Plain error in the context of jury charges is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a

[Ibid.]

clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)). Furthermore, defense counsel's failure to object to a jury instruction "is considered a waiver to object to the instruction on appeal." State v. Maloney, 216 N.J. 91, 104 (2013).

In reviewing a jury charge, "[t]he charge must be read as a whole in determining whether there was any error." State v. Torres, 183 N.J. 554, 564 (2005). In addition, "[t]he error must be considered in light of the entire charge and must be evaluated in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

Read as a whole, in context with the entire final instruction, the focus of the challenged model instruction was to inform the jury about the scope of the analysis Mercadante's testimony warranted. Moreover, the last sentence did not instruct the jury it could simply convict defendant on Mercadante's testimony alone; it conditioned the acceptance of his testimony on the jury finding it credible. Only then could the jury use that testimony, while also considering "the whole case," to convict defendant if, as the jury was also instructed, it was satisfied the State proved the elements of the crimes charged beyond a

12

reasonable doubt. The "whole case" included the evidence related to the heroin found in the motel room, and the State's uncontested evidence proving that all seized wax folds contained heroin, a controlled dangerous substance. We thus conclude there was no error, let alone plain error, in the final jury instruction.

Lastly, defendant challenges his sentences—concurrent prison terms of nine years with four years of parole ineligibility on the possession with intent to distribute and distribution counts—averring the trial judge double-counted the predicate offense to impose a mandatory extended term pursuant to N.J.S.A. 2C:43-6(f) and to find all three aggravating factors used in determining defendant's base term; and the judge did not consider "the relatively tiny amount of heroin involved in the case."

We "review sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014). In our review, we "must not substitute [our] judgment for that of the sentencing court." Ibid. We will affirm a sentence unless:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

[Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

The judge imposed the mandatory extended term—which defendant concedes in his merits brief was properly imposed—based on "one count of manufacturing, distributing[] or dispensing heroin" of which defendant was found guilty in Essex County.

The judge reviewed defendant's court history that included a juvenile and adult record. The judge considered defendant's juvenile probationary sentence for robbery and adjudications for other offenses including a distribution-related drug offense and receiving stolen property. The judge also delineated defendant's adult convictions: a 2002 drug possession for which he received probation; the 2004 Essex County convictions for, in addition to the predicate offense used to impose the extended term, a drug possession, school-zone drug offense, resisting arrest and hindering apprehension for which he received an aggregate five-year prison term with three years of parole ineligibility, including an escape and return to prison on that sentence; a 2008 second-degree eluding and resisting arrest for which he received a maximum sentence of ten years; and a 2016 disorderly persons hindering offense.

Immediately after listing all of defendant's prior adjudications and convictions the judge found aggravating factor three, the risk defendant will

commit another offense, N.J.S.A. 2C:44-1(a)(3), ostensibly based on the prior court history because the judge gave that factor "very heavy weight because of his lengthy record." The judge also found and gave "heavy weight" to aggravating factor six, the seriousness of defendant's prior record, N.J.S.A. 2C:44-1(a)(6), based on his juvenile and adult history including the predicate offense for the extended term.

Although, contrary to defendant's argument, the trial judge did not consider the predicate offense in finding aggravating factor nine, the need to deter defendant and others, N.J.S.A. 2C:44:1(a)(9), the judge did consider that predicate offense in determining the other two aggravating factors. The trial judge rightfully considered aspects other than the predicate offense in determining the applicability and weight of the aggravating factors, including defendant's juvenile record, probation records and response to rehabilitative efforts. See State v. Dunbar, 108 N.J. 80, 92 (1987). But he connected all prior indictable convictions to his findings regarding aggravating factors three and six.

We are unable to determine from the record what weight the judge gave to the predicate conviction used to impose the extended term. If the predicate offense was used to increase the base term, it would constitute double-counting,

a practice decried by the Court in <u>Dunbar</u>. <u>Id.</u> at 91-92; <u>see also</u> <u>State v. Vasquez</u>, 374 N.J. Super. 252, 267 (App. Div. 2005) (holding the <u>Dunbar</u> rationale, addressing "an extended term sentence imposed on a persistent offender pursuant to N.J.S.A. 2C:44-3a," applicable "to an extended term sentence imposed pursuant to N.J.S.A. 2C:43-6f"). As such, we are constrained to remand this matter for resentencing at which the predicate offense should not be considered in determining the length of defendant's sentence. We leave to the trial judge the extent to which, if at all, the removal of the predicate offense from the sentencing determination impacts the length of the term imposed.

Affirmed in part, remanded for resentencing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION