230 N.J. Super. 42 (1989)
552 A.2d 638
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LEONID JEFIMOWICZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 1, 1988.
Decided January 17, 1989.
*44 Before Judges PRESSLER, SCALERA and STERN.
Alan Dexter Bowman argued the cause for appellant.
Ann Marie Luvera, Deputy Attorney General, argued the cause for respondent (Cary Edwards, Attorney General, attorney; Ann Marie Luvera, of counsel and on the letter brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Following a trial by jury, defendant Leonid Jefimowicz was convicted of armed robbery, N.J.S.A. 2C:15-1; second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a; third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b; and receiving stolen property, N.J.S.A. 2C:20-7a. He was sentenced on the armed robbery conviction to a mandatory extended Graves Act term of life imprisonment subject to 25 years of parole ineligibility. N.J.S.A. 2C:43-6c, 2C:43-7c. The third-degree weapons charge was merged into the second-degree weapons charge, a concurrent 12-year sentence was imposed on that conviction, and a concurrent 7-year sentence was imposed on the receiving conviction.
On appeal defendant argues that he was denied effective assistance of counsel by reason of his trial attorney's failure to move for a severance of the charge of receiving stolen property *45 from the remainder of the offenses charged in the indictment.[1] He also contends that he was denied a fair trial by reason of prejudicially improper remarks made by the prosecutor in her summation. Defendant did not, however, make any challenge to the sentence imposed. We directed the filing of supplemental briefs addressing both the sentencing procedure and the quantum of the sentence,[2] and we now consider those issues as well.
In sum, we have concluded, based on our review of this record in the light of the applicable law and the argument of counsel thereon, that the two issues defendant has raised are without merit. R. 2:11-3e(2). We do, however, have grave concerns about the sentence, concluding that its imposition was procedurally defective and that its quantum is unsustainable. Accordingly, we affirm the guilty verdict but remand for new sentencing in accordance with this opinion.
The charges against defendant arose out of an incident which occurred early in the evening of September 28, 1986. The victim, William Zielenbach, then 16 years old and a high school student, was working at his part-time job pumping gas at a service station in Marlboro Township. He was alone there at the time. Defendant, driving a van, pulled into the station, stopping close to the booth where the cash drawer was kept. He asked William for $10 worth of gas. While he was pumping the gas, William recalled that he had left the cash drawer in the booth open, and he watched defendant looking at the visibly open cash drawer and back to him. When William finished pumping the gas, he went to the driver's window and as he approached it, he testified, defendant

*46 took a gun from underneath his flannel jacket and went like this, pointed it straight into my face, clicked the hammer back twice. On the second click, I jumped behind a door and I was running across the highway.
William further testified that he knew the gun was loaded because he could see "the bullets sticking out like the head of the bullets." No words, however, were spoken. Terrified, William ran across the highway to the home of a friend directly across from the gas station, and the friend's mother, seeing him in a hysterical state, called the police. Defendant, based on William's description, was apprehended in the van shortly thereafter. A consent search of the vehicle revealed the gun. It appears that when William fled, defendant simply drove away, leaving the cash drawer untouched. Nor, of course, had he paid for the gas.
Defendant, despite his prior criminal record, of which we will have more to say hereafter, testified in his own behalf. He said that he had bought the gun from a stranger in a bar for $50 two days earlier, thinking that it was probably stolen. On the day in question, he was looking for a bar in which he could sell the gun and had simply pulled into the service station for gas. When he stopped the van, he said, the gun slid out from where he had placed it under a rug onto the metal floor of the van. His explanation for what he was doing with the gun in his hand when William came to collect the money for the gas was that
Well I can hear the sound of thing going into the tank nozzle. Glance back at him, you know I looked, make sure he's back there. Pulled up the gun in my right hand. I put my left hand through the spoke of the steering wheel, pulled the hammer back. I was turning the cylinder on the gun. I blew some of the dust out of it. The moment I looked up I seen through the side vision, I looked up and he's standing right there. All of a sudden he just runs and me  I got the gun and the kid is running. I'm not suppose to have a gun.
He also testified that he had never noticed the cash drawer and never had any intention of committing a robbery.
As to the charge of receiving stolen property, the State adduced proof that on the same day on which defendant claimed to have bought the gun in the bar, a home had been burglarized and a firearm stolen whose registration number matched that of the gun found in defendant's van. Although *47 there was no attempt to prove that defendant had committed the burglary, his possession of the stolen gun was the gravamen of the receiving charge.
With respect to the claim of ineffective assistance of counsel based on counsel's failure to move for a severance of the receiving charge, we are satisfied that defendant has failed to meet the two-prong test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987). That test requires defendant to demonstrate that the alleged deficiency resulted in performance below the standard of reasonable competence and that it had a calculable effect on the outcome. We conclude that joinder of the receiving count was sufficiently justified so as to render the prospect of a grant of the severance motion, had it been made, unlikely. In brief, R. 3:7-6 permits the joinder of separate offenses not only where they are of the same or similar character but also where they constitute parts of a common plan or scheme. The State's case against defendant was predicated on the theory, supported by adequate evidence, that he drove into the gas station with the intention of committing an armed holdup. The facts surrounding his acquisition, two days before the crime, of the weapon with which the holdup was executed were relevant to proof of an overall plan to commit a robbery. In this posture, it was predictable that the motion would have been denied. See R. 3:15-2(b). And see, e.g., State v. Coleman, 46 N.J. 16 (1965), cert. den. 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966); State v. Coruzzi, 189 N.J. Super. 273 (App.Div. 1983), certif. den. 94 N.J. 531 (1983); State v. Reldan, 167 N.J. Super. 595 (Law Div. 1979), rev'd on other grounds 185 N.J. Super. 494 (App. Div. 1982), certif. den. 91 N.J. 543 (1982). It is also predictable that a denial would have been affirmed had it been appealed. We think it clear, then, that trial counsel's performance cannot be deemed constitutionally inadequate by failing to seek relief which would probably have been irremediably denied.
*48 We are also satisfied that the prosecutor's remarks in summation to which defendant now objects  primarily that defendant acted stupidly  did not go beyond the bounds of fair comment. See State v. Johnson, 31 N.J. 489, 510-511 (1960). The reference to "stupidity," using that verbiage, was first introduced into the summation process by defense counsel in the same context as referred to by the prosecutor. The prosecutor's reference was not only fleeting but had no real capacity to prejudice defendant. State v. Marks, 201 N.J. Super. 514 (App.Div. 1985), certif. den. 102 N.J. 393 (1986). We note, moreover, that when the prosecutor, in summation, began to couch her remarks in terms of her own beliefs and feelings, defense counsel promptly objected and the prosecutor apologized. The jury was in no way misled.
We come now to the sentencing and address first the procedure by which sentence was imposed. As we have noted, the sentence here imposed was a mandatory Graves Act extended term pursuant to N.J.S.A. 2C:43-6c which, in its last unnumbered paragraph, provides that
A person who has been convicted of an offense enumerated by this subsection and who used or possessed a firearm during its commission, attempted commission or flight therefrom and who has been previously convicted of an offense involving the use or possession of a firearm as defined in 2C:44-3d., shall be sentenced by the court to an extended term as authorized by 2C:43-7c., notwithstanding that extended terms are ordinarily discretionary with the court.
Prior to the date set for sentencing, the State, pursuant to R. 3:21-4d, filed a motion stating its intention to apply for a declaration at sentencing that defendant was "a persistent offender under the terms of N.J.S.A. 2C:44-3a" and, accordingly, that it would seek sentencing "to a mandatory extended term under N.J.S.A. 2C:43-6c and 2C:43-7." The motion was supported by the prosecutor's affidavit reciting the following prior convictions:
1. A conviction dated January 30, 1984, entered on a plea of guilty as an accomplice to aggravated assault contrary to N.J.S.A. 2C:12-1b(4) and 2C:2-6b(3).

*49 2. A conviction dated January 30, 1984, on a plea of guilty to receiving stolen property contrary to N.J.S.A. 2C:20-7.
3. A conviction dated July 9, 1984, on a plea of guilty to uttering a forged instrument contrary to N.J.S.A. 2C:21-1a(3).
The first of these was the only conviction triggering the mandatory extended term under N.J.S.A. 2C:43-6c, and while not specifically so identified when first referred to in the affidavit, the affidavit did have a separate concluding paragraph which stated that
As defendant has been previously convicted of an offense with a firearm, Accusation No. 0267-10-83, the defendant falls within the purview of N.J.S.A. 2C:43-6c. Therefore the State requests that this Court impose the mandatory extended term sentence authorized by that statute.
It thus appears from the manner in which the motion and supporting affidavit were structured that the State was seeking an extended term on alternative grounds: either a mandatory extended term under N.J.S.A. 2C:43-6c or a discretionary extended term under N.J.S.A. 2C:44-3a.
At the ensuing sentencing proceeding, the trial judge concluded that he was obliged to impose an extended term pursuant to the Graves Act. No hearing was conducted with respect to the prior Graves Act conviction although defendant, exercising his right of allocution just prior to imposition of the sentence, did refer to the conviction, which was entered on his plea of guilty to being an accomplice to a fourth-degree aggravated assault, the gravamen of which is pointing a firearm under circumstances manifesting extreme indifference to the value of human life. N.J.S.A. 2C:12-1b(4). Although defendant then attempted to impugn the validity of that guilty plea, the transcript of the plea proceeding was not introduced and the trial judge apparently gave little regard to defendant's statements respecting those proceedings.
The sentencing proceeding here took place on April 3, 1987. Eleven months later the Supreme Court filed its opinion in State v. Martin, 110 N.J. 10 (1988), in which the Chief Justice made clear the right of a defendant facing a mandatory extended Graves Act term not only to notice of that susceptibility but *50 also to a hearing to establish the existence of the prior Graves Act conviction. As the Chief Justice explained, imposition of an extended Graves Act term is so devastating to a defendant, both in respect of the fixed sentence itself and in its parole ineligibility consequences, that it cannot be imposed unless the hearing requirements of the Code are meticulously complied with. The State, moreover, is not only obliged to notice defendant of the prior conviction on which it will rely but also of "the substance of the proof that will be adduced in support of the claim that it is a prior Graves Act conviction." 110 N.J. at 20. That proof should, the Chief Justice further explained, include, where appropriate, not only a certified copy of the conviction but also relevant portions of trial, plea, and motion transcripts and the presentence report, all to the end that defendant is insured a realistic opportunity to contest the claim and adduce controverting proofs. Id. at 18.
We are satisfied that defendant was entitled to but did not receive the mandated hearing on the prior Graves Act offense. He must consequently be accorded that hearing now. We are also satisfied that at that hearing defendant may collaterally attack the validity of the prior Graves Act conviction. It is well settled that a prior conviction relied on as the basis of an enhanced penalty on a subsequent conviction may be challenged collaterally on the ground that it was uncounselled. See Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), reh. den. 447 U.S. 930, 100 S.Ct. 3030, 65 L.Ed.2d 1125 (1980); United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); U.S. v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); State v. Miscavage, 62 N.J. 294 (1973). We are satisfied that implementation of Martin requires as well that a defendant be permitted to collaterally attack his apparent prior Graves Act conviction in order to support a claim that he is not presently subject to a mandatory extended term.
*51 In view of defendant's representations to the trial court at the sentencing here, we are satisfied that the plea proceeding resulting in the prior Graves Act conviction must be scrutinized to determine if there was a factual basis adequate to support the Graves Act conviction. Cf., e.g., State v. Kovack, 91 N.J. 476 (1982). And see State v. Heitzman, 209 N.J. Super. 617 (App.Div. 1986), aff'd o.b. 107 N.J. 603 (1987). With respect to the factual basis, we also note that subsequent to this plea, the Supreme Court defined the circumstances pursuant to which accomplice liability will qualify for a Graves Act penalty. See State v. White, 98 N.J. 122 (1984); State v. Weeks, 107 N.J. 396 (1987). Since defendant's prior Graves Act conviction, according to the judgment itself, was based on his accomplice status, that aspect of his plea requires scrutiny as well.
If the judge should determine following the hearing that there is no basis for imposing a mandatory extended term Graves Act penalty, he should consider whether or not to impose a discretionary extended term pursuant to N.J.S.A. 2C:44-3. If he chooses not to, then defendant will, of course, have to be resentenced to any ordinary term under the Code consistent with the normal requirement of the Graves Act. It may be, however, that the judge will conclude that an extended term is appropriate, either because it is mandated or because he deems that to be a proper exercise of his discretion. For that reason, we address the quantum of the extended term already imposed.
We are of the view that under all of the circumstances here, the life term subject to a parole ineligibility period of 25 years for the conviction here shocks the judicial conscience. See State v. Roth, 95 N.J. 334, 364-365 (1984). It is never a simple task to articulate the reasons for being shocked  there is a degree of visceral reaction involved which defies precise verbalization. Nevertheless, the overwhelming reason for our conclusion is that the nature and circumstances of the crime here, even in view of defendant's criminal history, simply do not *52 warrant imposition of a sentence ordinarily reserved for the very worst crimes  murder, aggravated manslaughter, and kidnapping, for example. The sentence is simply disproportionate under the circumstances here.
In Martin, supra, the Chief Justice pointed out the gross disparity in sentencing consequences between an ordinary and an extended term. This case is a rare illustration of that disparity. The ordinary term for a first-degree robbery committed with a firearm is 10 to 20 years. N.J.S.A. 2C:43-6a(1). The presumptive term is 15 years, N.J.S.A. 2C:44-1f(1), and the mandatory term is between one-third to one-half of the sentence imposed. Thus, defendant, if sentenced to an ordinary term, could have been sentenced, for example, to a minimum sentence of ten years with a three-and-a-third year parole ineligibility term, or a maximum sentence of 20 years with a ten-year ineligibility term, or a presumptive sentence of 15 years with a five to seven-and-a-half year ineligibility term. The disparity implicit in these sentencing options is exponentially magnified when an extended term is imposed for a first-degree crime. Under N.J.S.A. 2C:43-7a(2), the extended term for a first-degree armed robbery is between 20 years and life and the presumptive term is 50 years. N.J.S.A. 2C:44-1f(1). Thus, there is a difference of 30 years between the minimum and the presumptive terms, a period greater than the maximum for the ordinary term. The parole ineligibility period on an extended term ranges from 6 years and 8 months to 25 years. Here, defendant got the maximum permissible life sentence with "real time" of 18-and-one-third years in excess of the minimum real time for a first-degree extended Graves Act term.
It is axiomatic that one of the purposes of the Code was to correct sentence disparity. That end is obviously difficult to accomplish by a sentencing scheme whose minimum and maximum vary so dramatically. We are therefore convinced that in extended term sentencing and particularly extended term sentencing for first-degree crimes, there must be most careful and *53 discrete evaluation by both the trial and the appellate courts. See State v. Bey (I), 112 N.J. 45, 93 (1988). We are also convinced that the guidelines for fixing the sentence prescribed by State v. Dunbar, 108 N.J. 80 (1987), also decided after the sentencing here, apply as much to a mandatory extended term as to a discretionary one.
Those guidelines require "primary focus ... on the conduct that occasions the sentence." 108 N.J. at 92. The crime here was found by the jury to be a first-degree armed robbery. Unquestionably, the 16-year-old victim was reasonably terrified and feared for his life. But there are armed robberies and armed robberies, and without intending to deprecate the seriousness of this crime, we believe it, on a scale of opprobriousness, not to have weighed in at the highest end. Dunbar also instructs that the defendant's prior record is an appropriate consideration, provided not used to "double count," that is, the same record justifying the extended term may not also be regarded as an aggravating factor in fixing the quantum of the extended term.
This defendant is no model citizen, no paradigm of law-abidingness and civic virtue. The record, however, of this then 38-year-old defendant, while lengthy, is not characterized by serious crimes in which physical harm was inflicted. According to the presentence report, his adult criminal history (he appears to have no juvenile record) started in 1969 with a fine for possession of alcohol. In 1973 he was sentenced to a fine and probation by a municipal court for possession of a starter pistol. The same year he was convicted of two disorderly persons offenses. Thereafter followed a violation of probation, shoplifting, and an attempted breaking and entering in Florida, resulting in his being charged as a fugitive when he left that jurisdiction. In 1975 he was convicted of a group of charges apparently involving the passing of a forged check; in 1979, he was convicted of an escape from Florida, and in 1980 and 1981 *54 of two shopliftings, a disorderly person's assault, and a theft under $200. In 1982 the criminal episode occurred which resulted in the plea of guilty to the fourth-degree atrocious assault, the prior Graves Act conviction. In 1983 defendant was convicted of theft and forgery and in 1984 of another group of theft offenses. By and large, the sentences imposed were minimal.
Defendant, as we understand this record, is generally hard-working and gainfully employed. It appears that his primary problem is alcoholism and, despite the leit motif of the presentence report that he obtain rehabilitative treatment, he has apparently been unable or unwilling to overcome the root cause of his difficulty which, it appears, surfaced after a 12-year career service in the United States Marines which ended in a dishonorable discharge.
Defendant's record is not enviable. It does not, however, bespeak a sociopath who has done physical harm to others and whose likelihood of redemption and return to productive society is remote. Nor indeed was the prior Graves Act offense particularly serious  it was that Code anomaly of a fourth-degree aggravated assault, undoubtedly the least serious offense, calculated by grading, which qualifies for Graves Act sentencing.
We have belabored these facts to illustrate that while defendant's crime clearly requires punishment in the form of a prison term and a mandatory ineligibility period, it does not justify, in the circumstances, the absolute maximum term the law allows for the most depraved of crimes. Should an extended term be reimposed, we trust the trial judge will carefully consider Dunbar and reweigh his alternatives.
We affirm the verdict of guilt. We remand to the trial court for new sentencing proceedings as herein directed and consequent modification of the judgment of conviction.
NOTES
[1] On counsel's motion, a fifth charge of the indictment, possession of a weapon by a convicted felon, had been severed as a routine matter.
[2] Defendant's supplemental brief advises that counsel, with defendant's concurrence, had taken the view that any sentencing defects could be raised by a post-conviction relief application and should be so raised in order not to "divert this Court's attention" from the other issues raised.