574 A.2d 428

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. LEONID JEFIMOWICZ, DEFENDANT–RESPONDENT.

Argued February 26, 1990—Decided May 30, 1990.

*Nancy E. Peremes,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Ann Marie Luvera,* Deputy Attorney General, of counsel and on the brief).

*Alan Dexter Bowman* argued the cause for respondent.

The opinion of the Court was delivered by

HANDLER, J.

This case requires the Court to consider again the appropriate standards governing mandatory extended term sentencing under the Graves Act. The trial court concluded that such sentencing was required because defendant had been convicted of armed robbery, a Graves Act offense, and defendant's criminal record alone established a prior conviction for a Graves Act offense. It therefore sentenced defendant on the armed robbery count to an extended term of life imprisonment with a twenty-five year parole disqualifier. On appeal, the Appellate Division found that the trial court should have conducted a hearing to determine whether the prior offense was a Graves Act offense and, further, that it should have applied the sen-

tencing standards applicable to discretionary extended terms to the mandatory extended term under the Graves Act. These rulings present the issues on appeal.

## I.

Following a trial by jury, defendant, Leonid Jefimowicz, was convicted on March 5, 1987, of first-degree armed robbery, *N.J.S.A.* 2C:15–1; second-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4a; third-degree unlawful possession of a weapon, 2C:39–5b; and receiving stolen property, *N.J.S.A.* 2C:20–7a. Prior to sentencing, the State filed a motion seeking imposition of a mandatory extended term pursuant to the Graves Act, *N.J.S.A.* 2C:43–6c and *N.J.S.A.* 2C:44–3d or, alternatively, a discretionary extended term pursuant to *N.J.S.A.* 2C:44–3a. The motion was supported by certified copies of three of defendant's prior judgments of conviction, including a January 30, 1984 conviction entered on a plea of guilty as an accomplice to aggravated assault, *N.J.S.A.* 2C:12–1b(4) and 2C:2–6b(3). The State argued that this prior plea constituted a Graves Act conviction.

The trial court accepted the State's argument that the Graves Act mandated extended term sentencing and imposed an extended term of life imprisonment with a twenty-five year parole disqualifier. The court merged the third-degree weapons charge into the second-degree weapons charge and imposed a concurrent twelve-year sentence. In addition, the court gave defendant a concurrent seven-year sentence for the receiving stolen property count.

In a reported decision, 230 *N.J.Super.* 42, 552 *A.*2d 638 (1989), the Appellate Division affirmed the conviction but remanded the matter for sentencing, concluding that under our decision in *State v. Martin*, 110 *N.J.* 10, 538 *A.*2d 1229 (1988), before a defendant can be sentenced as a second-time Graves Act offender, the defendant must be permitted collaterally to challenge the validity of a prior guilty plea that constitutes the

basis of the earlier Graves Act offense conviction, and that this defendant had not been afforded that opportunity. The Appellate Division directed the trial court to scrutinize the plea proceedings underlying the prior conviction in order to determine if it was in fact a Graves Act offense. 230 *N.J.Super.* at 51, 552 *A*.2d 638. The Appellate Division also found that, because the aggravating factors did not justify the imposition of the maximum sentence with the maximum period of parole ineligibility, defendant's sentence "shocks the judicial conscience." *Ibid.* It determined further that the sentencing guidelines prescribed in *State v. Dunbar*, 108 *N.J.* 80, 527 *A*.2d 1346 (1987), apply to both mandatory and discretionary extended term sentencing and that the trial court should look to those guidelines when resentencing defendant. 230 *N.J.Super.* at 53, 552 *A*.2d 638.

We granted the State's cross-petition for certification. 117 *N.J.* 71, 563 *A*.2d 834 (1989). The issues thus presented are whether our holding in *Martin* required the trial court to conduct a further hearing to determine if the factual basis underlying the prior plea demonstrated that the conviction was a Graves Act offense, and whether *Dunbar* applies to mandatory, in addition to discretionary, extended term sentencing.

## II.

The sentencing provisions of the Code of Criminal Justice direct that a hearing be conducted in conjunction with the imposition of a mandatory sentence. The Graves Act, *N.J.S.A.* 2C:43-6d, provides in pertinent part: "The court shall not impose a mandatory sentence ... unless the ground therefor has been established at a hearing." In *State v. Martin, supra,* we held that this statutory provision requires that where the underlying record is unclear with respect to the nature of a prior conviction, a hearing is required at which the basis for an extended Graves Act term must be established. 110 *N.J.* at 17, 538 *A*.2d 1229 ("Subsection 6d ... is an explicit command for 'a

hearing' at which 'the ground' for an extended Graves term ... must be established."). The defendant in *Martin* was convicted of first-degree robbery, *N.J.S.A.* 2C:15–1, a Graves Act offense, and, because he had a prior Graves Act conviction, received a mandatory extended term. That prior conviction was based on a guilty plea to a charge of "armed robbery." The record of the conviction did not indicate whether a firearm was involved. We remanded for resentencing, and directed that a hearing be held, ruling that a record of a conviction for armed robbery without additional information provides no certainty that the conviction is based on an underlying Graves Act offense because facially it is impossible to determine whether a firearm was used. *Id.* at 16, 538 *A.*2d 1229.

Defendant argues that the identical problem that required a remand in *Martin* is present in this case. According to defendant, the question of the possession and use of the firearm is equally unclear in this case. However, the record in this case discloses that the basis for defendant's prior conviction was a plea of guilty as an accomplice to . aggravated assault, by knowingly pointing a firearm, contrary to *N.J.S.A.* 2C:12–1b(4) and 2C:2–6b(3). Hence, unlike *Martin*, the record of the guilty plea here generates no uncertainty with respect to the use of a firearm in the commission of the offense that is the basis of the prior conviction.

It is also stressed, however, that the plea of guilty was based on defendant's participation only as an accomplice in the prior offense. Defendant argues that this earlier conviction cannot qualify as a prior Graves Act violation without a hearing because the record alone is equivocal with respect to defendant's exact role as an accomplice.

This Court has previously addressed the circumstances pursuant to which accomplice liability qualifies for a Graves Act sentencing. *See State v. Weeks*, 107 *N.J.* 396, 526 *A.*2d 1077 (1987); *State v. White*, 98 *N.J.* 122, 484 *A.*2d 691 (1984). In *White*, we held that accomplices found guilty of Graves Act

offenses, as well as those found guilty of unarmed offenses, who knew or had reason to know that their compatriots would use or be in possession of a firearm, are subject to Graves Act penalties. 98 *N.J.* at 126, 484 *A.*2d 691. In reaching this conclusion, we reasoned that in such a case, the accomplice "has committed the same crime as the individual who possessed or used the gun." *Id.* at 130, 484 *A.*2d 691. A fundamental premise of accomplice liability is that "[b]y definition an accomplice must be a person who acts with the *purpose* of promoting or facilitating the commission of *the* substantive offense for which he is charged as an accomplice." *Id.* at 129, 484 *A.*2d 691 (emphasis in original). Moreover, "[f]or both the accomplice and his partner to be guilty, 'it is essential that they shared in the intent which is the crime's basic element.' " *Ibid.* (quoting *State v. Fair,* 45 *N.J.* 77, 95, 211 *A.*2d 359 (1965)). In *Weeks,* we reaffirmed the principle that for an accomplice to be subject to a Graves Act penalty, he must be an accomplice to a Graves Act offense. Specifically, we held that an accomplice to armed robbery must be found to have "shared the purpose to commit a robbery *with a weapon,*" 107 *N.J.* at 405, 526 *A.*2d 1077 (emphasis in original), and that for that accomplice to receive a Graves Act term, the weapon must have been a firearm. *Id.* at 398–99, 526 *A.*2d 1077.

In light of these standards, defendant urges that a conviction as an accomplice to aggravated assault based only on a record of a guilty plea does not, facially, reveal whether defendant had such knowledge or shared purpose. Defendant argues, therefore, that our holding in *Martin* requires a hearing to establish whether or not defendant shared the purposes of committing the offense with a firearm or knew or should have known that a firearm would be involved in the commission of the offense.

We cannot agree. Defendant misunderstands the reliance that a sentencing court is entitled to place on the record of a prior conviction when that record itself is unambiguous and creates no uncertainty that the underlying offense was a Graves Act violation. Here, the conviction itself and the guilty

plea on which it was based specifically refer to *N.J.S.A.* 2C:12–1b(4). That statute expressly refers both to the use of a firearm in the commission of the aggravated assault and defendant's knowledge of that use. Thus, the record itself discloses that defendant was convicted of being an accomplice to "knowingly under circumstances manifesting extreme indifference to the value of human life point[ing] a firearm ... at or in the direction of another." *N.J.S.A.* 2C:12–1b(4). This case is, therefore, quite different from *State v. Martin, supra,* where the prior conviction was for armed robbery without any specification of the weapon involved. Because that armed robbery could have been committed with a knife, a baseball bat, or any other "deadly weapon," it was impossible to determine without a further hearing whether or not a firearm was involved and thus that the Graves Act was implicated. Due to the severity of imposing an extended term sentence, we required such a hearing in order to assure that "all aspects of our criminal proceedings are not only designed to be fair, but that they are fair in fact." 110 *N.J.* at 19, 538 *A.*2d 1229.

In addition, the record in this case contains no uncertainty with regard to whether, in accepting the earlier guilty plea, the trial court then found and understood that the underlying offense was based on the Graves Act. The sentence that the trial court imposed on the defendant for the prior conviction is explainable only as a sentence for a Graves Act offense. Defendant was sentenced to 18 months with 18 months parole disqualifier as an accomplice to aggravated assault. This term could only have been given for a Graves Act violation. The earlier offense is explicitly classified as a fourth-degree offense under our Criminal Code. *N.J.S.A.* 2C:12–1b. Fourth-degree Graves Act offenses are subject to a mandatory prison term of 18 months without parole eligibility. *N.J.S.A.* 2C:43–6c. The fact that the court sentenced defendant to precisely that term indicates that the sentencing court was aware of the Graves Act requirements and was satisfied that, as an accomplice, defendant was subject to a Graves Act term and understood

that the Graves Act itself dictated the terms of parole ineligibility. It is hardly surprising that defendant concedes that he received a Graves Act sentence for the prior conviction. In contrast, the sentence actually imposed for the prior offense in *Martin* was not one that demonstrated that the underlying conviction was based on a Graves Act offense or that the sentencing court understood the conviction as requiring a Graves Act sentence.

Defendant asserted at oral argument that he was not at the scene of the crime for which he pled guilty as accomplice to aggravated assault. He disputes that this earlier conviction falls within the purview of the Graves Act because, he claims, he had no knowledge that a firearm would be employed in the commission of the offense. This assertion, however, flatly contradicts the record. Defendant pled guilty specifically to being accomplice to aggravated assault by "knowingly" pointing a firearm. If defendant was guilty of this crime, then he was assuredly properly convicted as a Graves Act offender. It must follow that if defendant were to succeed in establishing his recently-offered version of the prior offense, then he could not have been guilty of being an accomplice to knowingly pointing a firearm and therefore to an aggravated assault. In that circumstance, the guilty plea as entered was invalid and would have to be set aside. *See State v. Barboza,* 115 *N.J.* 415, 558 *A.*2d 1303 (1989). An application for relief based on his assertions at oral argument, therefore, would not seek merely to clarify the prior conviction or simply to challenge the prior conviction as a Graves Act offense. Rather, it would indicate that defendant now disputes the underlying factual basis of the earlier guilty plea and challenges the validity of the guilty plea itself. It is tantamount to a collateral attack on the prior conviction.

We hold that if a defendant's challenge to a prior conviction in the course of sentencing under the Graves Act as a repeat Graves Act offender will serve to invalidate the prior

conviction, rather than only to clarify or explain it, he or she must proceed by an appropriate application for post-conviction relief. *R.* 3:22. In the absence of such an application, the sentencing court is entitled to rely on the record of the prior conviction to satisfy itself that the prior conviction constitutes a Graves Act offense. If the record on its face clearly establishes that defendant is a repeat Graves Act offender, a court may sentence defendant to an extended-term sentence. This procedure will not otherwise deprive defendant from seeking to set aside the prior guilty plea consistent with the standards that govern post-conviction relief.

Because the record clearly establishes defendant's prior Graves Act conviction, no further hearing was required to clarify or elucidate the nature of that conviction. We conclude that the State properly notified defendant of its intention to seek an extended term sentence when it filed its notice of motion seeking a mandatory extended term pursuant to *N.J. S.A.* 2C:43-6c and 2C:44-3d and that the trial court correctly determined on the record before it that defendant should receive a mandatory extended term sentence for his second Graves Act conviction. *See Martin, supra,* 110 *N.J.* at 20, 538 *A.*2d 1229.

The Appellate Division also determined that the sentence imposed on defendant—life imprisonment with a twenty-five year parole disqualifier—was so excessive as to shock the judicial conscience. It observed: "The sentence is simply disproportionate under the circumstances here." 230 *N.J.Super.* at 52, 552 *A.*2d 638. We need not pass on the soundness of this conclusion. It may be, as noted by the appellate court, that the crimes defendant has been convicted of in this case are not of the same ilk as those for which life imprisonment has traditionally been imposed, such as murder, aggravated manslaughter or kidnapping. Nevertheless, a determination that a sentence "shocks the judicial conscience" should be supported by sufficient evidentiary information in the record and a statement of

reasons dealing with relevant sentencing considerations. *Compare State v. Jarbath,* 114 *N.J.* 394, 555 *A.*2d 559 (1989) *with State v. Jabbour,* 118 *N.J.* 1, 570 *A.*2d 391 (1990) and *State v. Johnson,* 118 *N.J.* 10, 570 *A.*2d 395 (1990).

The Appellate Division ruled further that, on remand, the trial court should follow the guidelines for extended term sentencing prescribed in *State v. Dunbar, supra. Dunbar,* however, explicitly delineated standards applicable to discretionary extended term sentencing; *Dunbar* did not consider mandatory extended term sentencing, including Graves Act mandatory penalties. 108 *N.J.* at 88, 527 *A.*2d 1346. We decline to extend *Dunbar* broadly to the mandatory extended term sentencing context.

The inappropriateness of applying *Dunbar* outside of the context of discretionary extended term sentencing, other than in narrowly defined areas, is readily apparent from our reasoning. We observed with discretionary sentencing that "[p]ractical application of the Code's extended sentencing scheme ... involves a multi-step process." *Id.* at 87, 527 *A.*2d 1346. We established a four-part procedure: first, the sentencing court must determine whether defendant is susceptible to an extended term sentence; second, the court must decide whether or not to apply an extended term sentence; third, it must weigh aggravating against mitigating factors to determine the "base term" of the extended sentence; fourth, the court must decide whether to impose a parole disqualifier.

Three of these four guidelines are simply not germane to mandatory extended term sentencing. The Graves Act requires an extended term sentence with a period of parole ineligibility for a second Graves Act offense. There is nothing discretionary about this determination. Thus, the Graves Act itself obviates steps one, two, and four of the *Dunbar* approach. Only *Dunbar's* requirement that a sentencing court must weigh the aggravating and mitigating factors in determining an appropriate "base term" of the extended sentence is at all rele-

vant to a decision of Graves Act sentencing since even under mandatory extended sentencing, some discretion reposes in the sentencing court with respect to determining the base term, as well as the period of parole ineligibility. *See, e.g., State v. Reed,* 215 *N.J.Super.* 105, 107, 521 *A.*2d 368 (App.Div.1987).

Here, the sentencing court imposed on defendant the maximum term for first-degree aggravated assault, a life sentence, together with twenty-five years of parole ineligibility, which is the prescribed term of ineligibility for a life sentence. *N.J.S.A.* 2C:43–7b. The presumptive extended term for a first-degree offense, however, is fifty years. *N.J.S.A.* 2C:44–1f(1); *N.J.S.A.* 2C:43–7a(2). Unless the aggravating factors clearly outweigh the mitigating factors, a sentencing court should not impose a term in excess of fifty years, nor should it impose a period of parole ineligibility greater than "one-half of the authorized term (or a term of twenty-five years in the case of a sentence of life imprisonment). *N.J.S.A.* 2C:43–7b." *Dunbar, supra,* 108 *N.J.* at 92, 527 *A.*2d 1346.

As noted, the Appellate Division looked to *Dunbar* in concluding that defendant's sentence was excessive. We reaffirm that sentencing courts must be cognizant of their flexibility in determining the duration of parole ineligibility even under the Graves Act. *State v. Towey,* 114 *N.J.* 69, 84, 552 *A.*2d 994 (1989); *see State v. Kruse,* 105 *N.J.* 354, 521 *A.*2d 836 (1987). Thus, we hold that with respect to mandatory extended term sentencing underlying the Graves Act, the sentencing court should weigh aggravating and mitigating factors to determine the "base term" and to fix the period of parole ineligibility as we outlined in *Dunbar.*

In any sentencing case under the Code, it is imperative that the court apply the correct standards, as well as apply those standards correctly. *See State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984). In this case the sentencing court may not have clearly understood the sentencing standard to be followed with respect to the imposition of a mandatory extended sentenc-

ing under the Graves Act. It must be particularly mindful of the weighing process entailed in determining the base term and the period of parole ineligibility that is a derivative of that base term. We therefore determine that a remand for resentencing is appropriate.

### III.

In sum, we reverse the Appellate Division's determination that a *Martin* hearing is required to determine whether defendant's prior conviction for fourth-degree aggravated assault was a Graves Act violation. Because we have clarified the standards applicable to mandating extended terms of sentencing under the Graves Act and that the trial court may not have followed these principles for reaching a sentencing determination under the Graves Act, we affirm the Appellate Division's judgment to remand for resentencing, as modified by this decision.

*For reversal in part; for affirmance in part; for remandment and modification*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.