678 A.2d 233

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. OSCAR LEE KIRK, DEFENDANT–RESPONDENT.

Argued March 26, 1996—Decided July 10, 1996.

*Janet Flanagan,* Deputy Attorney General, argued the cause for appellant (*Deborah T. Poritz,* Attorney General of New Jersey, attorney).

*Ruth Bove Carlucci,* Assistant Deputy Public Defender, argued the cause for respondent (*Susan L. Reisner,* Public Defender, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

The critical issue raised in this appeal is whether the trial court properly exercised its discretion in finding that a prosecutor did not act arbitrarily in declining to waive imposition of an extended term sentence under the guidelines promulgated pursuant to *State v. Lagares,* 127 *N.J.* 20, 601 *A.*2d 698 (1992). The Appellate Division, hearing the case on its Excessive Sentencing Oral Argument calendar, found that "the trial court abused its discretion in not overruling the [prosecutor's] refusal to waive the extended term." We granted certification, 143 *N.J.* 323, 670 *A.*2d 1064 (1995), and now reverse.

I

Defendant, Oscar Lee Kirk, co-defendant, Linette Barber, and her two children were travelling on Route 80 when their car was stopped by a state trooper because defendant was driving erratically. Defendant disclaimed any possessory interest in the car, and at the trooper's request, co-defendant Barber consented to a search of the car. That search revealed three wrapped packages containing a total of six and one-half pounds of cocaine, and a locked briefcase containing $8,000 in cash. In August 1990, a jury convicted defendant of third-degree possession of cocaine, a violation of *N.J.S.A.* 2C:35–10a(1); and first-degree possession of six and one-half pounds of cocaine with the intent to distribute, a violation of *N.J.S.A.* 2C:35–5a(1) and –5b(1). The State's motion for an extended term sentence pursuant to *N.J.S.A.* 2C:43–6f was

granted. Defendant was sentenced to an extended term of fifty years of imprisonment with twenty five years of parole ineligibility.

On appeal, the Appellate Division affirmed defendant's conviction but remanded for reconsideration of the sentence because defendant had been sentenced before the promulgation of the guidelines required by this Court in *Lagares*. The Appellate Division ruled that if that extended term sentence had been properly imposed under the guidelines, it was not manifestly excessive.

At the reconsideration hearing, the prosecutor complied with the Attorney General Guidelines required by *Lagares* by stating his reasons for refusing to waive the extended term. The sentencing court re-imposed the identical sentence, and defendant again appealed. The Appellate Division reversed, finding that the trial court abused its discretion by not overruling the prosecutor's refusal to waive the imposition of an enhanced sentence.

## II

The State argues that the Appellate Division misinterpreted *N.J.S.A.* 2C:43–6f and improperly construed the *Lagares* guidelines. The Appellate Division based its reversal on the following. Defendant did not serve a prison term for either of his two prior New York drug offenses. Second, defendant was simply passing through New Jersey on an interstate highway at the time of the present offense.

### -A-

The mandatory extended term statute for repeat drug offenders involved in this case is *N.J.S.A.* 2C:43–6f. It was enacted as part of the Comprehensive Drug Reform Act of 1987 (Act). *N.J.S.A.* 2C:35–1 to –23 and *N.J.S.A.* 2C:36–1 to –9. The articulated objectives of the Act, set forth in the Legislature's "Declaration of Policy and Legislative Findings," include the

"imposition of a uniform, consistent and predictable sentence for a given offense ... [as] an essential prerequisite to [a] rational deterrent scheme designed ultimately to reduce the incidence of crime." *N.J.S.A.* 2C:35–1.1a. The Act focuses on the punishment and deterrence of serious and dangerous offenders. *Ibid.* Accordingly, it "target[s] for expedited prosecution and enhanced punishment those repeat drug offenders and upper echelon members of organized narcotics trafficking networks who pose the greatest danger to society." *N.J.S.A.* 2C:35–1.1c. By providing strict punishment for those offenders, the Legislature sought to reduce the demand for illegal drugs and the incidence of drug-related crime. *Ibid.*

■ The statute, in relevant part, provides:

> A person convicted of manufacturing, distributing, dispensing or possessing with intent to distribute any dangerous substance or controlled substance analog under *N.J.S.* 2C:35–5, of maintaining or operating a controlled dangerous substance production facility under *N.J.S.* 2C:35–4, of employing a juvenile in a drug distribution scheme under *N.J.S.* 2C:35–6, leader of a narcotics trafficking network under *N.J.S.* 2C:35–3, or of distributing, dispensing or possessing with intent to distribute on or near school property or buses under section 1 of *P.L.* 1987, c. 101 (C.2C:35–7), who has been previously convicted of manufacturing, distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled dangerous substance analog, shall upon application of the prosecuting attorney be sentenced by the court to an extended term as authorized by subsection c. of *N.J.S.* 2C:43–7, notwithstanding that extended terms are ordinarily discretionary with the court.
>
> . . . .
>
> For the purpose of this subsection, a previous conviction exists where the actor has at any time been convicted under chapter 35 of this title or Title 24 of the Revised Statutes or under any similar statute of the United States, this State, or any other state for an offense that is substantially equivalent to *N.J.S.* 2C:35–3, *N.J.S.* 2C:35–4, *N.J.S.* 2C:35–5, *N.J.S.* 2C:35–6 or section 1 of *P.L.* 1987, c. 101 (C.2C:35–7).

[*N.J.S.A.* 2C:43–6f.]

While *N.J.S.A.* 2C:43–6f defines which drug offenders are eligible to receive a mandatory extended term at the option of "the prosecuting attorney," *N.J.S.A.* 2C:43–7c prescribes the range of those extended terms a court may or must impose.

■ In *Lagares,* this Court examined whether section 6f impermissibly delegated judicial sentencing authority to the prosecutor. *Lagares, supra,* 127 *N.J.* at 27–31, 601 *A.*2d 698. The Court concluded that vesting unfettered discretion in the prosecutor "exceeds the permitted 'prosecutorial influence on the sentencing determination.'" *Id.* at 31, 601 *A.*2d 698 (quoting *State v. Warren,* 115 *N.J.* 433, 448, 558 *A.*2d 1312 (1989)). The Court acknowledged that "[a]s currently written ... Section 6f ... would be unconstitutional." *Ibid.* "The infirmity in Section 6f is the prosecutor's sole discretion to select, without standards and without being subject to the court's review, which defendants will receive an increased sentence or enjoy favorable treatment." *Id.* at 28, 601 *A.*2d 698.

To cure that constitutional defect, the Court "interpret[ed] the statute to require that guidelines be adopted to assist prosecutorial decision-making with respect to applications for enhanced sentences under *N.J.S.A.* 2C:43–6f." *Id.* at 32, 601 *A.*2d 698. The Court also ensured that effective judicial review would exist to protect defendants from abusive prosecutorial sentencing decisions, by requiring prosecutors to state on the trial court record their reasons for seeking an enhanced sentence. *Ibid.* Further, the Court held that "an extended term may be denied or vacated where defendant has established that the prosecutor's decision to seek the enhanced sentence was an arbitrary and capricious exercise of prosecutorial discretion." *Id.* at 33, 601 *A.2d* 698. So construed, *N.J.S.A.* 2C:43–6f was found to comport with the principles of the separation of powers doctrine.

On April 20, 1992, the Attorney General, in consultation with county prosecutors, issued statewide guidelines governing the State's decision to apply for enhanced sentencing under section 6f. Directive Implementing Guidelines for Determining Whether to Apply for an Extended Term Pursuant to *N.J.S.A.* 2C:43–6f from Robert J. Del Tufo, Attorney General, to the Director, Division of Criminal Justice and all County Prosecutors (Apr. 20, 1992) (*Attorney General Guidelines* ). To begin with, the guidelines re-

quire prosecutors to establish the existence of the defendant's predicate drug offense and to provide written notification to both the court and the defendant of the State's intention to apply for an extended term. *Id.* § II.1, 3. In addition, the guidelines outline the factors on which a prosecutor may rely as a basis for waiving an enhanced sentence. *Id.* § II.5. They include: (a) the State is unable to prove the grounds for defendant's eligibility for an extended term by a preponderance of the evidence; (b) defendant lacked counsel at the trial or plea that constituted the predicate offense; (c) defendant pleads guilty under enumerated circumstances; (d) the State determines that waiver is essential to secure defendant's cooperation with the prosecution; (e) the State questions whether the proofs available to prove the present offense are sufficient to sustain the conviction; (f) defendant's prior record includes only convictions that are extremely remote, and the State determines that there is no reason to believe that defendant derived a substantial source of income from criminal activity at any time; and (g) the State determines that waiver is appropriate based upon the existence of compelling extraordinary circumstances, including an assessment of the seriousness of both the present and predicate offenses, and the nature and amount of the controlled dangerous substance involved. *Ibid.*

■ Consistent with this Court's decision in *Lagares,* the Attorney General Guidelines also require prosecutors to state on the record their reasons for refusing to waive an extended term. *Id.* § II.4. This provision is designed to provide a foundation upon which a reviewing court can assess the prosecutor's exercise of discretion. As previously noted, a defendant challenging a prosecutor's application for an extended term must establish that the decision constituted an abuse of prosecutorial discretion. The *Lagares* Court made clear the substantial burden that a defendant has in establishing arbitrariness:

We emphasize that the burden on defendant to prove that a prosecutor's decision to deny leniency constituted an arbitrary and capricious exercise of discretion is heavy. Defendants will have to do more than merely make general conclusory statements that a prosecutorial determination was abusive. Instead, they must

> show clearly and convincingly their entitlement to relief under the standard established herein. Application of that standard is consistent with the legislative determination to make an extended sentence for repeat offenders the norm.
>
> [*Lagares, supra,* 127 *N.J.* at 33, 601 *A.*2d 698.]

-B-

■ Defendant qualified for an extended term sentence under section 6f because in 1988, he was convicted in New York of third-degree attempted sale of cocaine to an undercover police officer, a violation of section 220.39 of New York's Penal Code. *See N.Y. Penal Law* § 220.39 (McKinney 1996). That offense was substantially similar to a violation of *N.J.S.A.* 2C:35–5 and therefore satisfied the requirements of a prior drug conviction under *N.J.S.A.* 2C:43–6f and *N.J.S.A.* 2C:44–4c. In 1982, defendant had also been convicted in New York for introducing contraband and marijuana into a prison, a violation of section 70.15 of New York's Penal Code. *See N.Y. Penal Law* § 70.15 (McKinney 1995).

At the remand hearing to reconsider the sentence in light of the Attorney General Guidelines, the State first focused on section II.5, which defines the standard for waiving an enhanced sentence. The prosecutor noted that at the time of his New York convictions, defendant was represented by counsel. With regard to defendant's New Jersey conviction, the prosecutor pointed out that defendant had not pled guilty or cooperated with the State, and was on probation at the time he committed the present offense. The State asserted that those factors demonstrated defendant's disrespect for the law and his unwillingness to rehabilitate himself.

The prosecutor also emphasized the underlying facts of defendant's offense. Defendant had possessed six and one-half pounds of high quality cocaine, more than twenty-one times the amount that constitutes a first-degree offense. According to the State, that amount of cocaine reflected what an expert had described as the markings of a cocaine cartel, thereby indicating that defendant had connections with members of the upper echelon of the cocaine trafficking network. The State further noted that defendant

possessed $8,000 in cash at the time of his arrest, negating any contention that defendant did not "derive a substantial source of income from criminal activity."

Last, the State argued that section II.5g of the Attorney General Guidelines, the so-called "catch-all" provision, did not provide a basis for waiving extended term sentencing in this case. According to the State, the sheer quantity of the cocaine involved, and defendant's use of two infants as shields for his illegal activity, militated against finding that "compelling extraordinary circumstances" made waiver appropriate. Defendant contends that the prosecutor should have waived the extended term under the catch-all provision because of the remoteness of his prior convictions. We find defendant's argument to be unpersuasive. Defendant was still on probation for the 1988 allegedly remote offense when he committed the 1990 drug offense in New Jersey.

Defendant further argues that the prosecutor's application for enhanced sentencing was an arbitrary and capricious abuse of prosecutorial discretion. We conclude, however, that the State sufficiently explained its reasoning on the record, and cited ample evidence to support its interpretation of the guidelines. As the State asserts, the prosecutor might even have been remiss in his responsibilities had he not sought an extended term for this defendant who demonstrated an escalating pattern of drug activity. Defendant has failed to meet the heavy burden that a defendant must bear to prove that the State's decision to deny leniency was arbitrary and capricious; he simply failed to establish by clear and convincing evidence that he was entitled to a waiver. *Lagares, supra,* 127 *N.J.* at 33, 601 *A.*2d 698. Accordingly, the trial court properly concluded that there was no basis to deny the prosecutor's application for an extended term sentence.

We agree with the State that the Appellate Division erred in considering the lack of prior imprisonment as a basis for concluding that the trial court abused its discretion in failing to overrule the prosecutor's refusal to waive the enhanced sentence.

The language of section 6f refers only to previous convictions and makes no exception for a conviction that does not result in a prison term. On the contrary, section 6f mandates the imposition of an extended sentence for defendants previously convicted of third or fourth degree offenses pursuant to *N.J.S.A.* 2C:35–5b(3), (5), (9), (11), (12), (13), (14), but who were not incarcerated because of the presumption of nonincarceration contained in *N.J.S.A.* 2C:44–1e. *See, e.g., State v. DeJesus,* 252 *N.J.Super.* 456, 458, 599 *A.*2d 1315 (Law Div.1991) (denying defendant's motion for reconsideration of sentence where defendant was serving extended term on underlying offense in violation of *N.J.S.A.* 2C:35–5a, 5b(3)). Similarly, a conviction in another jurisdiction need not involve incarceration, only that "a sentence of imprisonment in excess of 6 months was authorized under the law of the other jurisdiction." *N.J.S.A.* 2C:44–4c.

### III

Next, defendant contends that the Attorney General Guidelines fail to cure the separation of powers infirmity that this Court recognized in *Lagares* because they do not permit the prosecutor to waive an extended term based on an "interest of justice" standard. According to defendant, a prosecutor might believe that a defendant's background, work history, and rehabilitative efforts make the defendant an inappropriate candidate for an extended term sentence. The Attorney General Guidelines, however, do not empower the State to waive the imposition of enhanced sentencing on those grounds. Similarly, the sentencing court is precluded from considering such factors because its authority to review the prosecutor's decision is limited to an evaluation of whether the State properly applied the guidelines. Because the guidelines do not incorporate those "interest of justice" factors, defendant maintains, they are unfairly weighted against defendants and therefore fail to cure the constitutional defect in section 6f.

The New Jersey Constitution provides:

The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution.

[*N.J. Const.* art. III, ¶ 1.]

"Although sentencing discretion is shared to some extent among the three branches of government, the determination of the sentence is committed to the discretion of the judiciary." *Lagares, supra,* 127 *N.J.* at 27–28, 601 *A.*2d 698. This Court has stressed that the " '[p]ronouncement of judgment of sentence is among the most solemn and serious responsibilities of a trial court.' " *Warren, supra,* 115 *N.J.* at 449, 558 *A.*2d 1312 (quoting *State v. Roth,* 95 *N.J.* 334, 365, 471 *A.*2d 370 (1984)).

For a sentencing statute to be constitutional under the separation of powers clause, it must, expressly or by construction, be interpreted to vest ultimate authority in the judiciary. *State v. Alvarez,* 246 *N.J.Super.* 137, 144, 586 *A.*2d 1332 (App.Div.1991). " 'As long as a statute does not take from the courts the final discretion to impose sentence, it does not infringe upon the constitutional division of responsibilities.' " *Id.* at 145, 586 *A.*2d 1332 (quoting *Eldridge v. State,* 418 *So.*2d 203, 207 (Ala.Crim.App. 1982). In *Lagares,* this Court held that section 6f violated the separation of powers doctrine because it furnished the prosecutor with "sole discretion to select, without standards and without being subject to the court's review, which defendants will receive an increased sentence or enjoy favorable treatment." *Lagares, supra,* 127 *N.J.* at 28, 601 *A.*2d 698. To correct that statutory defect, the Court instructed the State to adopt guidelines to channel prosecutorial discretion and provide for adequate judicial review.

We are entirely satisfied that the Attorney General Guidelines cure the constitutional infirmity *Lagares* found to exist with respect to section 6f. Those guidelines vest the judiciary with the authority to make the ultimate determination of the sentence to be imposed. Section I of the guidelines states that "the judiciary retains the power to review decisions pursuant to *N.J.S.A.* 2C:43–

6f to avoid prosecutorial abuses." *Attorney General Guidelines, supra*, § I. The guidelines reinforce this Court's holding in *Lagares* that the imposition of an extended term "may be denied or vacated [by the sentencing court] where defendant has established that the prosecutor's decision to seek the enhanced sentencing was an arbitrary and capricious exercise of prosecutorial discretion." *Lagares, supra*, 127 *N.J.* at 33, 601 *A.*2d 698.

█ Accordingly, we reject defendant's assertion that the guidelines should include an "interest of justice" factor. The legislative objective of section 6f is to impose lengthy prison terms on repeat drug offenders as "the norm rather than the exception." *Id.* at 32, 601 *A.*2d 698. To achieve that objective, there is no need to widen the latitude of prosecutorial waiver discretion by incorporating an "interest of justice" factor as defendant urges. To do so would contravene the Legislature's aim.

The Legislature adopted the Code to replace "the unfettered sentencing discretion of prior law with a structured discretion designed to foster less arbitrary and more equal sentences." *Roth, supra*, 95 *N.J.* at 345, 471 *A.*2d 370. Under the pre-Code criminal law, judges were free to mete out widely differing sentences to defendants convicted of virtually identical crimes. *Id.* at 348, 471 *A.*2d 370. The Code seeks to make sentencing more rational and uniform "by emphasizing the severity of the crime, rather than the defendant's capacity for rehabilitation." *State v. Jabbour*, 118 *N.J.* 1, 6, 570 *A.*2d 391 (1990). Thus, focusing on "interest of justice" factors, such as a defendant's work history or upbringing, undermines that very goal.

Furthermore, the Attorney General Guidelines have, to some extent, incorporated some of the spirit of the "interest of justice" standard. Section II.5g, the catch-all provision, provides defendants with an analogous escape valve. It authorizes prosecutors to waive enhanced sentencing "based upon the existence of compelling extraordinary circumstances, including an assessment of the seriousness of the present offense and the predicate offense(s), and consideration of the nature and amount of C.D.S. involved."

*Attorney General Guidelines, supra,* § II.5g. This catch-all provision operates in much the same way as an "interest of justice" standard in that it provides prosecutors and reviewing courts with a basis for safeguarding defendants from the imposition of an extended term where principles of justice would not be served. The word "including" is intended to be a term of enlargement that "conveys the conclusion that there are other items includable, though not specifically enumerated." *Zorba Contractors, Inc. v. Housing Auth.,* 282 *N.J.Super.* 430, 434, 660 *A.*2d 550 (App.Div. 1995); 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.07 (5th ed. 1992).

Ultimately, of course, the prosecutor's application of the guidelines is reviewed by the sentencing court under an arbitrary and capricious standard. *Lagares, supra,* 127 *N.J.* at 33, 601 *A.*2d 698. That judicial review protects defendants against prosecutorial abuse of discretion in the application of enhanced sentencing. It also preserves the delicate balance of powers mandated by the New Jersey Constitution, thereby remedying the constitutional defect inherent in section 6f. *State v. Gonzalez,* 254 *N.J.Super.* 300, 308–09, 603 *A.*2d 516 (App.Div.1992).

## IV

Appellate courts must undertake a careful and vigorous review of any claim that a trial court abused its sentencing discretion. *State v. Jarbath,* 114 *N.J.* 394, 401, 555 *A.*2d 559 (1989). An appellate court should not, however, simply substitute its own judgment for that of the sentencing court when disagreeing with the sentence imposed. *Ibid.* This Court has further cautioned that appellate courts should exercise sparingly their power of review of a trial court's sentencing discretion. *State v. Ghertler,* 114 *N.J.* 383, 388, 555 *A.*2d 553 (1989).

In *Roth,* this Court delineated an appellate court's role in reviewing sentencing decisions. *Roth, supra,* 95 *N.J.* at 364–66, 471 *A.*2d 370. The Court stated that appellate courts may:

(a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors found below to determine whether those factors were based upon competent credible evidence in the record; and (c) determine whether, even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.

[*Id.* at 364–65, 471 A.2d 370.]

■ Viewing defendant's sentence of fifty years with twenty-five years of parole ineligibility in light of the *Roth* standard leads us to conclude that his sentence violates some basic sentencing guidelines under the Code. A mandatory extended term required by section 6f shall be fixed in accordance with *N.J.S.A.* 2C:43–7 and shall include a term of parole ineligibility "fixed at, or between, one-third and one-half" of the base term, but not less than three years for a third-degree offense. *N.J.S.A.* 2C:43–6f.

■ A review of the controlling statutory provisions indicates that although the trial court was obligated to impose an enhanced sentence based on the prosecutor's refusal to waive sentence enhancement, it still possessed a reservoir of discretion. Under *N.J.S.A.* 2C:43–7c, the extended term sentence for a first-degree offense under *N.J.S.A.* 2C:35–5b(1) is determined by *N.J.S.A.* 2C:43–7a(2) that prescribes a range of between "20 years and life imprisonment." *N.J.S.A.* 2C:43–7c further directs that a term of parole ineligibility, [unless waived by the prosecutor], must be "fixed at or between one-third and one-half" of the base term, or a minimum of twenty-five years if the base term imposed is life.

■ Because *N.J.S.A.* 2C:43–6f does not define what constitutes a presumptive term, *N.J.S.A.* 2C:44–1f must be referenced. That statute provides that an extended term imposed pursuant to *N.J.S.A.* 2C:43–7a(2) has a presumptive term of fifty years. *N.J.S.A.* 2C:44–1f(1). The aggravating and mitigating factors must be balanced to determine whether to impose a base term above or below the presumptive term. *Ibid.* Here, the trial court imposed the presumptive base term after concluding that the

following six aggravating factors were present: the quantity of cocaine possessed, *N.J.S.A.* 2C:44–1a(1); the likelihood that defendant would become a repeat offender, *N.J.S.A.* 2C:44–1a(3); the substantial likelihood that defendant is involved in organized drug trafficking, *N.J.S.A.* 2C:44–1a(5); defendant's prior criminal record, *N.J.S.A.* 2C:44–1a(6); defendant was on probation at the time he committed the present offense, *N.J.S.A.* 2C:44–1a(6); payment to commit the present offense, *N.J.S.A.* 2C:44–1a(7); and the need for deterrence, *N.J.S.A.* 2C:44–1a(9). The trial court found no mitigating factors.

Although the trial court exercised its discretion and imposed the presumptive base term of fifty-years, it imposed the maximum term of parole ineligibility as though a life term had been imposed. It is difficult to imagine what relevant sentencing consideration may have existed to support the maximum parole disqualifier.

Unlike the procedure involved under *N.J.S.A.* 2C:35–12, in which the prosecutor negotiates the sentence and the trial court has the option of accepting the negotiated sentence or rejecting the agreement in its entirety, *State v. Bridges,* 131 *N.J.* 402, 409–11, 621 *A.*2d 1 (1993); *N.J.S.A.* 2C:43–6f does not authorize the prosecutor to fix the terms of the mandatory enhanced sentence. In a section 6f case, the role of the prosecutor is to waive or refuse to waive the mandatory extended term. *Lagares, supra,* 127 *N.J.* at 28, 601 *A.*2d 698. Once the prosecutor refuses to waive the mandatory extended sentence, in a case that does not involve a plea agreement or a post-verdict agreement pursuant to *N.J.S.A.* 2C:35–12, the role of the prosecutor is limited to making a recommendation to the sentencing court regarding the base term and the parole disqualifier.

In *State v. Jefimowicz,* 119 *N.J.* 152, 574 *A.*2d 428 (1990), this Court held that the guidelines for discretionary extended term sentencing prescribed in *State v. Dunbar,* 108 *N.J.* 80, 89–91, 527 *A.*2d 1346 (1987) should be applied to narrowly defined areas within mandatory extended term sentencing. *Jefimowicz, supra,* 119 *N.J.* at 162, 574 *A.*2d 428. One recognized area in which the

*Dunbar* guidelines apply is the utilization of aggravating and mitigating factors in "determining the base term[ ] as well as the period of parole ineligibility" because of the discretion that reposes with the sentencing court. *Id.* at 163, 574 *A.*2d 428; *State v. Towey,* 114 *N.J.* 69, 82, 552 *A.*2d 994 (1989). The Court in *Jefimowicz* reaffirmed that sentencing courts must be cognizant of their flexibility in determining the duration of parole ineligibility even where a mandatory extended term is involved. *Jefimowicz, supra,* 119 *N.J.* at 163, 574 *A.*2d 428. That flexibility should be applied so that ordinarily the longest permitted term of parole ineligibility would "be imposed only on base terms at or near the top of the range for that degree of crime." *Towey, supra,* 114 *N.J.* at 81, 552 *A.*2d 994.

In the present case, the trial court failed to explain the apparent inconsistency between the presumptive base term and the maximum term of parole ineligibility. Ordinarily, "the most severe parole ineligibility terms [should] be imposed in conjunction with base terms that exceed the presumptive term." *Id.* at 84, 552 *A.*2d 994. Under the facts of this case, it is self-evident that once the trial court found six aggravating factors and no mitigating factors but nonetheless imposed the presumptive base term, it did not appreciate its corresponding obligation to impose a term of parole ineligibility that was not at or near the top of the range. The same aggravating factors are used to determine both the appropriate base term and the period of parole ineligibility. *Ghertler, supra,* 114 *N.J.* at 389, 555 *A.*2d 553.

The trial court offered no explanation to justify the absence of any balance between the presumptive base term and the maximum twenty-five-year period of parole ineligibility. The statute simply required the trial court to set the minimum term "at, or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater. . . ." *N.J.S.A.* 2C:43–6f. When a trial court fails to adhere to the guidelines in this limited area of mandatory extended term sentencing, the Code's restraint on the discretion of judges is violated, and the Code's pursuit of "greater

uniformity" is reduced rather than enhanced. *See Dunbar, supra,* 108 *N.J.* at 97, 527 *A.*2d 1346; *State v. Hartye,* 105 *N.J.* 411, 417, 522 *A.*2d 418 (1987); *Roth, supra,* 95 *N.J.* at 369, 471 *A.*2d 370.

Both the Code, *N.J.S.A.* 2C:43–2e, and the Rule of Court, *Rule* 3:21–4(e), require the sentencing court to state on the record the reasons supporting the base term and any term of parole ineligibility not mandated by statute. Based on the presumptive base term imposed in the present case, the trial court failed to explain the eight and one-third years of parole ineligibility that exceeded the statutory required minimum of sixteen and two-third years. The trial court may have labored under the erroneous impression that section 6f obligated it to fix the term of parole ineligibility at one-half of the base term. When defendant was sentenced initially on October 12, 1990, the trial court noted that the presumptive term was fifty years and that the court "could sentence defendant to 50 years with one-third dash [sic] one-half of the sentence [as] parole ineligibility." A remand is required to properly determine the term of parole ineligibility.

The judgment of the Appellate Division is reversed. The case is remanded to the Law Division to redetermine the term of parole ineligibility in accordance with this opinion.

*For reversal and remandment*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.