**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1867-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DAVID CONNOLLY,

     Defendant-Appellant.

_____

Submitted May 11, 2021 – Decided June 24, 2021

Before Judges Moynihan and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 17-11-0976.

Joseph E. Krakora, Public Defender, attorney for appellant (Amira R. Scurato, Designated Counsel, on the brief).

Robert J. Carroll, Acting Morris County Prosecutor, attorney for respondent (Paula Jordao, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

Defendant David Connolly was convicted by jury of third-degree receiving stolen property, N.J.S.A. 2C:20-7(a), after twice selling jewelry that had been stolen from a storage locker he had helped clean out to an establishment that purchased gold, jewelry and other valuables (the gold store). He was sentenced as a persistent offender, N.J.S.A. 2C:44-3(a), to an extended prison term of seven-years subject to three-and-one-half years' parole ineligibility. He appeals from his conviction and sentence, arguing:

POINT I

DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE STATE EFFECTIVELY INTRODUCED HIS WIFE'S TESTIMONY THROUGH OTHER MEANS DESPITE THE FACT THAT WHEN SPOUSAL PRIVILEGE IS ASSERTED, ALL TESTIMONY IS BARRED.

POINT II

THE STATE IMPROPERLY USED DEFENDANT'S OPENING STATEMENT AS EVIDENCE AGAINST HIM TO SUSTAIN THEIR BURDEN OF PROOF AND THE TRIAL JUDGE FAILED TO FULLY AND CLEARLY CHARGE THE JURY THAT OPENING STATEMENTS ARE NOT EVIDENCE.

POINT III

THE TRIAL JUDGE ERRED IN FINDING THE BASIS FOR AN EXTENDED TERM AND IN ASSIGNING A DISCRETIONARY PAROLE INELIGIBILITY TERM.

We affirm defendant's conviction but remand for resentencing.

Defendant's wife, L.A. (Leto), had been hired by H.K. (Hera) to assist her in cleaning and consolidating items in three storage units she and her nonagenarian mother used.[1] On August 25, 2017, defendant was also hired to assist Hera, working in two storage units separate and distanced from the unit in which Hera and Leto worked that day.

Hera did not intend to return to the units until September 8, 2017. Her interaction with Leto on that date forms the basis for defendant's argument that he was denied a fair trial when the State "effectively introduced his wife's testimony." After the trial court, out of the jury's presence, discussed with the assistant prosecutor the limitations on what could be adduced at trial, cautioning him not to have Hera "state anything that [Leto] may have said" to Hera, defendant, who was representing himself, said he had no objection to the proposed limitations.

Those discussions led to Hera's direct-examination testimony that, although she had intended to go to the units with Leto on September 8, they

---

[1] We use pseudonyms for the victim and witnesses to protect their identities.

changed their plans. Defendant claims the testimony that followed violated the spousal privilege under N.J.R.E. 501(2):[2]

> [ASSISTANT PROSECUTOR]: On September 8th, 2017 did you have a conversation, and I don't want you to discuss the details, but just did you have a conversation with [Leto]?
>
> [HERA]: Yes.
>
> [ASSISTANT PROSECUTOR]: As a result of that conversation, did you two go to [the gold store]?
>
> [HERA]: Yes.

Hera testified she had inquired of the gold store's owner if defendant had sold any jewelry. The owner produced: photographs of jewelry and coins that had belonged to Hera, her mother and sister; defendant's "photo ID"; and two purchase agreements, each showing defendant's name and address, phone number, and the amount the owner had paid defendant for the items sold on August 26 and 28, 2017. After meeting with the gold store's owner, Hera and Leto reported the crime to East Hanover police.

Defendant claims Hera's testimony contravened N.J.R.E. 501(2)— paralleling N.J.S.A. 2A:84A-17—which provides in the part deemed pertinent

---

[2] Defendant acknowledges the marital-communications privilege set forth in N.J.R.E. 509 "is not relevant to this appeal as there was no actual communication between defendant and his wife."

A-1867-19

by defendant in his merits brief: "The spouse or one partner in a civil union couple of the accused in a criminal action shall not testify in such action except to prove the fact of marriage or civil union unless (a) such spouse or partner consents . . . ." He concedes, "[h]ere, of course the wife did not testify." He nevertheless contends "the State proceeded to use the wife's testimonial evidence despite her election not to testify." The State did no such thing.

Not only was Leto not called by the State to testify at trial, her testimony was not "effectively introduced." Contrary to defendant's argument that "the jury was effectively given the substance of [Leto's] testimony without her actually testifying," the facts revealed to the jury did not disclose that the impetus for Hera and Leto to go to the gold store was anything Leto had said. Nothing about the conversation between Hera and Leto was revealed during the brief direct examination about their discussion, and certainly nothing about what Leto had said was told to the jury. Hera's testimony, did not, as defendant contends, lead to "the inescapable inference . . . that defendant's wife knew not only about defendant's theft of the jewelry from the storage locker . . . but also that he had sold the items to a specific store, as referenced by receipts that she provided to [Hera]." As defendant noted in his merits brief, "the jury was not told that defendant had been arrested in West Orange on September 8, 2017[,]

and that in his car were jewelry items and . . . two August receipts from [the gold store]" which Leto, who was in the vehicle, saw prior to her conversation with Hera.

"Considerable latitude is afforded" to trial court evidentiary rulings and they will be reversed "only if [they] constitute[] an abuse of discretion." State v. Feaster, 156 N.J. 1, 82 (1998); see also State v. Cole, 229 N.J. 430, 449 (2017). The State did not violate "the spousal privilege[, which] is intended to protect the sanctity and tranquility of marriage from the negative consequences which are 'presumed to attend the compelled condemnation of one spouse by another in a criminal proceeding.'" State v. Mauti, 208 N.J. 519, 534 (2012) (quoting State v. Baluch, 341 N.J. Super. 141, 171 (App. Div. 2001)). We discern no abuse of the trial court's discretion by allowing testimony that Hera and Leto spoke before they went to the gold store. See State v. Rose, 206 N.J. 141, 157 (2011).

Defendant also argues the assistant prosecutor improperly used statements made by the then-self-represented defendant[3] during his opening as part of the State's proofs even though defendant did not testify at trial. In his merits brief,

---

[3] Defendant's application to proceed pro se was granted, but he ceded representation to standby counsel to deliver the summation.

defendant pinpoints the portion of his opening statement he argues the State used to meet its burden of proof:

> The defendant did help [Hera] for a few hours on that day. That's true. The ID card that . . . the photograph reflects, it does belong to the defendant. Defendant did make a transaction with [the gold store's owner], but the dispute is the particular items that he's claiming that were made. The signatures are altered signatures, and the State will concede to that. They went back a year later after the alleged incident and obtained receipts with signatures on it but with no ID and no items of jewelry. That the receipt with the items of jewelry is not signed. It's not signature.

Defendant contends the assistant prosecutor, in two portions of his summation, "used defendant's non-evidential opening as proof against him." In the first statement, the assistant prosecutor, said: "And don't forget that the defendant said in his opening the defendant did make a transaction with [the gold store's owner]. Those are his words in his opening statement." In the second statement, the assistant prosecutor told the jury:

> And remember the defendant said in his opening the ID card that the photographs reflect does belong to the defendant. Those are his words in the opening. State's Exhibit 12, the actual purchase agreement, the signed purchase agreement with the defendant's signature at the bottom. That is direct evidence.

Reviewing the challenged remarks in the context of the summation as a whole, State v. Carter, 91 N.J. 86, 107 (1982), the assistant prosecutor did nothing more

7

than use defendant's concessions to highlight that the State's direct proofs were uncontested.

The assistant prosecutor's first statement responded to defense counsel's summation during which he contended defendant's signature did not appear on the gold store's receipts, and that the State had failed to produce the jewelry that had been smelted or any DNA fingerprint or videotape evidence that proved defendant had sold the jewelry to the gold store owner. The assistant prosecutor countered by referencing the purchase agreements which he said were "signed receipts. They're right there. If you look at them both together, they're signed, they're signed the defendant received payment. It's all there. Go through this evidence when you are deliberating, ladies and gentlemen." Only then did the assistant prosecutor point out defendant's concession that he made a transaction with the gold store owner, a fact proved not only by the signed documents but also the gold store's photograph of defendant's "ID card" that matched the card seized from defendant when he was arrested[4] and the owner's testimony.

The assistant prosecutor's second challenged statement responded to defense counsel's summation that there was "no evidence, no testimony that

---

[4]   The parties stipulated that the ID card was retrieved from the "personal property . . . defendant had on his person when he was arrested[.]"

A-1867-19

[defendant's] fingerprints were even on the ID card." Defense counsel had also impugned the gold store owner's credibility, rhetorically asking the jury what was he "covering up. Is it that when the person who came in to make the sale presented [defendant's] ID and now [the owner] has to back[-]peddle" about how long the video surveillance from his store was preserved "so as to make the justification for why the video doesn't exist because the video would have shown who made the sale[.]"

A review of the assistant prosecutor's entire response shows he focused the jury's attention on the State's direct evidence: the photographs taken by the owner of the receipts from both transactions, defendant's ID card and both purchase agreements. Again, he merely highlighted that defendant, in his opening statement, did not contest that the ID card was his; that was the same fact to which he had stipulated.

Defendant's opening statement was not part of the State's proofs. The assistant prosecutor's references to parts of the opening properly commented on what proofs presented by the State during the trial were not contested. Those proofs, not any reference to defendant's opening, sustained the State's burden with regard to the elements of the crime.

A-1867-19

Further, defendant did not object to the remarks now challenged, "suggest[ing] that [he] did not believe the remarks were prejudicial at the time they were made." State v. Frost, 158 N.J. 76, 84 (1999). "The failure to object also deprive[d] the court of an opportunity to take curative action." Ibid. We determine none of the assistant prosecutor's remarks warrant reversal because, individually or cumulatively, they were not so egregious to substantially prejudice defendant's right to a fair trial. State v. Timmendequas, 161 N.J. 515, 575 (1999).

We deem defendant's argument that the trial court's instruction to the jury: "Arguments, statements, remarks, opening statements, summations, closing statements are not evidence and must not be treated as evidence[,]" was "only one passing reference" that was "woefully deficient and is presumed to be reversible error," to be without sufficient merit to warrant discussion. R. 2:11-3(e)(2). We note only that the court's instruction tracked the model charge, see State v. Whitaker, 402 N.J. Super. 495, 513-14 (App. Div. 2008) ("When a jury instruction follows the model jury charge, although not determinative, 'it is a persuasive argument in favor of the charge as delivered.'" (quoting State v. Angoy, 329 N.J. Super. 79, 84 (App. Div. 2000))), and the court also iterated that instruction in its opening charge. Defendant posed no objection to the

charge as given. Defendant's failure to pose an objection to the jury instructions "constitutes strong evidence that the error belatedly raised . . . was actually of no moment." State v. White, 326 N.J. Super. 304, 315 (App. Div. 1999). We discern no error, much less plain error, in the instruction. R. 2:10-2; see also State v. R.B., 183 N.J. 308, 321-22 (2005) ("A claim of deficiency in a jury charge to which no objection is interposed 'will not be considered unless it qualifies as plain error . . . .'" (quoting State v. Hock, 54 N.J. 526, 538 (1969))).

Defendant challenges the trial court's imposition of a seven-year extended term sentence as a persistent offender, N.J.S.A. 2C:44-3(a), and a three-and-one-half-year period of parole ineligibility, N.J.S.A. 2C:43-7(b). We review an imposition of a sentence for abuse of discretion. See State v. Johnson, 118 N.J. 10, 15 (1990).

Defendant argues the trial court specified only one predicate offense in finding he was eligible for an extended term because the statute defines, in part, a persistent offender as one

> who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least [eighteen] years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within [ten] years of the date of the crime for which the defendant is being sentenced.

11

[N.J.S.A. 2C:44-3(a).]

Defendant correctly notes the only predicate offense mentioned by the trial court was his federal conviction. The court should have clearly indicated which of the other crimes from defendant's extensive criminal record satisfied the state's requirements. Defendant, however, told the court he was not contesting the State's motion to impose a persistent-offender extended term, stating "[i]t is what it is"; he acknowledged the accuracy of his criminal history as set forth in the presentence report and conceded it was "extensive." Under those circumstances, there is no reason to remand this matter for the trial court to specify which of defendant's twelve prior indictable convictions, sentenced on at least six separate sentencing dates established defendant's persistent offender status.

Defendant also contends the trial court erred in failing to find mitigating factors eight, N.J.S.A. 2C:44-1(b)(8) ("defendant's conduct was the result of circumstances unlikely to recur"), and nine, N.J.S.A. 2C:44-1(b)(9) (defendant's character and attitude "indicate that he is unlikely to commit another offense") based on the court's comments at sentencing about defendant's "exemplary" behavior and demonstrated intelligence during the trial. Not only were those mitigating factors not raised by defendant, they are belied by defendant's lengthy

12

criminal history, including, as the trial court recognized, a violation of supervised release and reincarceration on defendant's most recent federal sentence.

Finally, defendant argues a remand for resentencing is necessary for the trial court to "make appropriate findings about the existence of and weights assigned to the sentencing factors before it considers imposing a discretionary extended term and a discretionary parole disqualifier."  We review the trial court's "sentencing determination[s] under a deferential standard."  State v. Lawless, 214 N.J. 594, 606 (2013).  We do not "substitute [our] judgment for the judgment of the sentencing court."  Ibid.  Instead, we will affirm a sentence unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

See also State v. Miller, 237 N.J. 15, 28 (2019).

The court largely complied with the mandate that sentencing judges are required to set forth on the record the reasons for imposing the sentence and the factual basis supporting each aggravating and mitigating factor considered, N.J.S.A. 2C:43-2(e); R. 3:21-4(g), and must also state the balancing process that led to the sentence, State v. Martelli, 201 N.J. Super. 378, 385 (App. Div. 1985). The court well-explained its reasons for finding aggravating factors three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense"), six, N.J.S.A. 2C:44-1(a)(6) ("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted"), and nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law"); and for rejecting defendant's proposed mitigating factors one, N.J.S.A. 2C:44-1(b)(1) ("[t]he defendant's conduct neither caused nor threatened serious harm"), and six, N.J.S.A. 2C:44-1(b)(6) ("[t]he defendant has compensated or will compensate the victim of his conduct for the damage or injury that he sustained"). We, therefore follow our Supreme Court's instruction that "an appellate court should not second-guess a trial court's finding of sufficient facts to support an aggravating or mitigating factor if that finding is supported by substantial evidence in the record." State

v. O'Donnell, 117 N.J. 210, 216 (1989); see also State v. Carey, 168 N.J. 413, 426-27 (2001).

The trial court, however, may not have adhered to the Court's "standards for imposing an extended term of imprisonment on a persistent criminal offender under N.J.S.A. 2C:43-7 and any effect that decision has on the discretionary power of the court to impose a period of parole ineligibility under N.J.S.A. 2C:43-7(b)." State v. Dunbar, 108 N.J. 80, 82 (1987). Once a trial court has determined that the statutory criteria for subjecting a defendant to an extended term have been met, the court must then decide "whether to impose an extended sentence." Id. at 89. The court must then "weigh the aggravating and mitigating circumstances to determine the base term of the extended sentence." Ibid. Once that base term is determined, a sentencing court may, if "clearly convinced that the aggravating factors substantially outweigh the mitigating factors," impose a minimum period of parole ineligibility "not to exceed one-half of the [base] term" imposed. Id. at 92 (first quoting N.J.S.A. 2C:43-6(b) and then quoting N.J.S.A. 2C:43-7(b)).

We cannot determine from the record if the trial court "erred by reaching a conclusion that could not have reasonably been made upon a weighing of the relevant factors." Roth, 95 N.J. at 366. The trial court concluded "the

aggravating factors[, upon which the court] put great weight on all three of them" and the aggravating factors "do substantially outweigh the non-existent mitigating factors"; but the court did not state it was clearly convinced of that weighing process.

Moreover, the court did not parse the convictions upon which it based aggravating factor six. It would have been improper for the court to consider a prior conviction both as a predicate offense for imposing a persistent offender extended term, N.J.S.A. 2C:44-3(a), and as a basis for finding an aggravating factor under N.J.S.A. 2C:44-1(a). See State v. Vasquez, 374 N.J. Super. 252, 267 (App. Div. 2005) (concluding that it was impermissible double-counting for the court to raise the presumptive extended base term of defendant's sentence on account of defendant's prior conviction, which was the conviction requiring a mandatory extended term sentence). It is not clear from the record if the court double-counted the crimes used to find defendant was a persistent offender in determining the length of defendant's sentence or period of parole ineligibility. We are therefore constrained to remand for resentencing at which the court must address those issues.

Defendant's conviction is affirmed; remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                    A-1867-19